CRAIG, Appellant, v. JENSEN, Respondent

(278 N. W. 545)

(File No. 8165. Opinion filed March 29, 1938.)

Doyle & Mahoney and Tom Kirby, all of Sioux Falls, for Appellant.

E. D. Barron and T. M. Bailey, both of Sioux Falls, for Respondent.

RUDOLPH, J. On the 15th day of June, 1937, the Governor of this state caused to be served upon the plaintiff, Leo F. Craig, who is a member of the Board of Charities and Corrections, written charges alleging that the said Craig had been guilty of misconduct in the performance of the duties of his office. The alleged acts constituting the misconduct were set forth in detail. The Governor thereafter fixed a time for hearing upon the said charges and gave the plaintiff notice of the time fixed. A hearing was held at which the plaintiff, Craig, appeared personally and by counsel, and evidence was submitted. The Governor thereafter entered written findings of fact, and upon such findings entered his order removing the plaintiff as a member of the Board of Charities and Corrections. After the entry of the order of the Governor, the circuit court of Minnehaha county, upon the application of the plaintiff, issued its writ of prohibition, prohibiting the Governor from further proceeding with the removal of the plaintiff until

the further order of the court. A hearing was had upon the writ thus issued, and the court thereafter entered its finding of fact and conclusions of law upon which it based a judgment vacating and setting aside the writ of prohibition which it had entered. The plaintiff has appealed.

The statute under which the Governor acted, is section 7009, Rev. Code 1919, which provides as follows: "All constitutional state officers not liable to impeachment may be removed by the governor, after notice and hearing, for crimes, misconduct or malfeasance in office or for drunkenness or gross incompetency."

Appellant makes no contention here that he was not given notice or that he was not given a hearing and afforded an opportunity to defend against the charges of the Governor. The single contention of the plaintiff upon this appeal is that there was no evidence presented to the Governor at the hearing sufficient upon which to base the order of removal. This contention makes it necessary for us to first consider the extent of the review by the court of the evidence presented to the Governor.

The above-mentioned section 7009 of our Code was without question adopted pursuant to section 4 of article 16 of the Constitution of this state, which provides: "All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance or crime or misdemeanor in office, or for drunkenness or gross incompetency, in such manner as may be provided by law."

The Legislature has seen fit to vest in the Governor this power of removal provided in the Constitution. It should be noted that under this constitutional and Code provision, the Governor is not vested with an unlimited power of removal. The power may be exercised only for certain specified causes. If none of the specified causes for removal exist, the Governor is without power. As stated in the early case of State ex rel. Holmes v. Shannon, 7 S. D. 319, 64 N. W. 175, 179: "By expressly enumerating the causes for which such an officer may be removed, the constitution not only limits the causes, but limits removals to cases where such causes exist. We must not be understood as saying or meaning that such cause must first be judicially declared to exist before any power of removal can be exercised, but we do mean to say that the constitution plainly and unmistakably does forbid the removal of such an officer at the pleasure of anybody, whether governor,

legislature, or court. It not only projects a theory, but it declares a rule, and establishes the plan that constitutional officers, at least, unless otherwise provided in the constitution, do not hold their office during the will or pleasure of any officer or department of state."

██ The Governor not having the power under the Constitution to remove except for the specified causes, we believe that there must be some review by the court in a proper proceeding to examine the evidence, otherwise the Governor might remove a constitutional officer not subject to impeachment arbitrarily and at will, and thereby deprive such officer of a right he has under the Constitution. Much has been written in judicial opinions and in texts concerning the exact manner, whether executive, judicial, or quasi judicial in which the Governor acts when he purports to remove an officer for cause. However, in view of our constitutional provision, we deem it unnecessary to attempt to precisely classify the actions of the Governor in this proceeding. We think it clear, under this constitutional provision, that the Governor is not acting in a purely executive capacity. His acts are limited to the specified constitutional causes for removal, and are not subject to that un-limited discretion which inheres in a purely executive act. See State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545. And this constitutional provision differentiates the power of the Governor to remove, from the power of the President of the United States to remove, an inferior officer appointed by him, as that power is defined in the case of Myers v. United States, 272 U. S. 52, 47 S. Ct. 21, 71 L.Ed. 160. There is no limitation contained in the Federal Constitution upon the power of the President to remove inferior officers appointed by him. We have been unable to find in any other state a constitutional provision and statute similar to ours. North Dakota under an identical constitutional provision has vested the power of removal of constitutional officers not subject to impeachment in the courts by direct judicial proceeding. See section 197, Constitution of North Dakota; North Dakota Comp. Laws 1913, §§ 10467 to 10482. Florida has a constitutional provision relating to the general subject, but the final power of removal is left with the state Senate. Constitution of Florida, art. 4, § 15. The Florida court has held that their constitutional provision "defines a complete scheme under which the power of removal

is accomplished by making it a joint action on the part of the Governor and the Senate." State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 135, 92 A. L. R. 989. Obviously, our constitutional provision is not similar to that of Florida. There is no "complete scheme" of removal under our Constitution, but a simple mandate that officers within its meaning shall not be removed except for certain specified causes. However, even in the absence of constitutional provision, where the Legislature has vested in the Governor the power of removal only for specified causes, it is quite generally held that the court may consider the evidence. See annotations, 52 A. L. R. 8, 92 A. L. R. 998. We believe such should be the rule under our constitutional provision.

■■ It should be noted that no provision for an appeal from the action of the Governor is provided by the statute. The Governor's action is final, except in so far as it might be reviewed in some other proceeding. The present proceeding is one in prohibition. The Governor, not acting in a purely executive capacity, and it being contended that he is exceeding his authority under the Constitution, we believe this proceeding is proper. Our Code section 3019, as amended by chapter 424, § 1, Laws 1921, defines this proceeding, as follows: "The writ of prohibition is the counterpart of the writ of mandamus. It arrests the proceedings, administrative or judicial, or [of] any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person, or are without or in excess of the powers or authority conferred by law upon such tribunal, corporation, board or person."

In this proceeding, therefore, we review the action of the Governor for two purposes only: First, to determine whether he acted in excess of his jurisdiction; and, second, whether he acted in excess of the powers or authority conferred upon him by law. Some courts have taken the position that a lack of evidence tending to show any of the specified causes for removal by the Governor goes to the jurisdiction of the Governor to act. However, in this proceeding it is not necessary for us to say that the existence of competent evidence is a necessary element of the jurisdiction of the Governor. Under the last portion of the above section relating to prohibition, this court is permitted to determine whether the removal was in excess of the power or authority conferred by law.

■■■ In reviewing the evidence for the single purpose of determining whether the Governor has exceeded his authority, the court will not attempt to weigh the evidence, but will review the evidence only for the purpose of determining whether there was any competent evidence before the Governor tending to support a finding of any of the constitutional causes for removal. If there is any such evidence, its weight, we believe, is to be determined by the Governor. We so conclude, not only because no appeal has been allowed from the Governor's action, and we review simply to determine his authority (which must be dependent upon the existence of evidence and not its weight), but also because the Legislature has seen fit to vest this power in the Governor. The court should carefully avoid anything which would appear like an improper interference with the actions of the Governor in the discharge of this function. As stated by the Minnesota court in the case of State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118, 119, 39 Am. St. Rep. 595: "The evidence may be brought up, not for the purpose of weighing it, to ascertain the preponderance, but merely to ascertain whether there was any evidence at all to sustain the decision of the inferior tribunal, * * * yet, this power [of removal] being designed to insure efficiency and fidelity in the discharge of official duty, the degree of incompetency or inefficiency which amounts to sufficient cause for removal must of necessity, within certain established limits, rest somewhat in the sound discretion in the officer or body in whom the power of removal is vested."

The court should not substitute its judgment for that of the Governor, and, if there is any competent evidence in the record tending to support the Governor's action, his authority to act should be sustained.

■■■ The charge is misconduct in office. This term "misconduct in office" is a general term, and, so far as we can determine, has no well-defined meaning. The misconduct sufficient to justify a removal must be a misconduct in the conduct of the office, but just what constitutes misconduct is difficult of definition. The term itself implies as much as any definition of the term. It has been defined as "such acts as amount to a breach of the good faith and right action that are tacitly required of all officers," Etzler v. Brown, 58 Fla. 221, 50 So. 416, 417, 138 Am. St. Rep 113; or

"any act which is contrary to justice, honesty, principle, or good morals, if performed by virtue of office or by authority of office," State ex rel. Wynne v. Examining & Trial Board, 43 Mont. 389, 117 P. 77, 78, Ann. Cas. 1912C, 143. Other definitions might be found, but none of them are very helpful. We think misconduct in office means simply the doing of something which the officer ought not to do, or the failure to do something which he ought to do, in the conduct of his office. Each case must rest upon its own facts.

 The specified acts which the Governor found to constitute misconduct are as follows: First, that the plaintiff acted as warden of the state penitentiary while a member of the Board of Charities and Corrections, contrary to the provisions of section 5371, Rev. Code 1919, as amended by Laws 1925, c. 275, § 1, which provides that "No officer of any such institution shall be eligible to membership on such board"; second, that the plaintiff presented a voucher for lodging and meals while attending a meeting of the board at Sioux Falls, S. D., the residence of the plaintiff; third, that the plaintiff made expenditures from funds appropriated to the Board of Charities and Corrections without any action on the part of the board to the extent that the board's funds were depleted, and in order to obtain funds for the use of the board, he caused to be charged certain items of expense incurred by the board to the funds of the twine plant of the state penitentiary; fourth, that the plaintiff failed and refused to visit or inspect the state institutions as required by law; fifth, that the plaintiff failed and refused to cooperate with other members of the board. The trial court in its findings of fact found that there was some competent evidence tending to sustain the Governor on the first, second, third, and fourth alleged acts of misconduct. We will confine our discussion to the first, third, and fourth findings of the Governor.

Regarding the first act of misconduct, the evidence discloses that following the death of the then warden of the penitentiary, the plaintiff, Craig, proceeded to perform the duties of warden for a period of nine months. The evidence discloses that the plaintiff. while so acting, signed vouchers pertaining to the official business of the penitentiary, and then as president of the Board of Charities and Corrections approved such vouchers. The evidence further discloses that the plaintiff was actually performing the functions of

the warden of the state penitentiary. Craig contends that he was only acting in his capacity as president of the Board of Charities and Corrections, that he drew no salary as warden, and that, while he was so acting, the penitentiary was conducted in an orderly and efficient manner; but, as stated above, it is not the function of this court to weigh the evidence. The fact that the plaintiff performed the duties of warden and signed the vouchers is some competent evidence in support of the Governor's finding that the plaintiff, Craig, did act as warden of the state penitentiary while holding the office of president of the Board of Charities and Corrections, contrary to the spirit if not the letter of the statute.

There is competent evidence, we are satisfied, tending to support the finding of the Governor that the plaintiff, Craig, participated, at least, in the diversion of twine plant funds to the use of the Board of Charities and Corrections for expenditures made by the board which bore no relation to the twine plant.

Section 5385, Rev. Code 1919, provides that the Board of Charities and Corrections shall visit at least once each month all state institutions under its control. The record discloses that plaintiff, Craig, visited the State School and Home for the Feeble-Minded at Redfield but four times during a two-year period, that during these two years he called meetings of the board at Sioux Falls, S. D., and requested that the head of the Redfield institution attend these meetings. When questioned by his own counsel. plaintiff testified, as follows: "Q. Then, they also charge here that you, while acting as president of the board, insisted that the monthly meetings be held in Sioux Falls. A. I did that on two or three occasions."

Plaintiff offered testimony to justify his actions in calling the meetings of the board at Sioux Falls rather than at the different state institutions, but certainly plaintiff's insistence that meetings be held at Sioux Falls and the fact that only four times in a two-year period were meetings held at Redfield is some competent evidence tending to support the finding of the Governor that the plaintiff as a member of the Board of Charities and Corrections failed to conform to the statute last above quoted.

We do not believe a further discussion of the evidence is necessary or would be helpful. We have not attempted to set out in detail the evidence of the plaintiff in explanation of his acts in

102

connection with the alleged charges of misconduct because that we believe to be unnecessary for the purpose of this opinion. This evidence is such that the only purpose in setting it forth would be to weigh it against the evidence tending to support the findings of the Governor.

Giving full effect to the findings of the Governor on these three charges, which we must in view of the fact that they find some support in the evidence, we are convinced that these facts as found are sufficient to constitute a misconduct in office within the meaning of the constitutional and statutory provision. It is the province of the Governor and not the court to determine the action to be taken. Even though the court should be of the opinion after viewing all the evidence that the misconduct is slight, and that removal from office for such slight misconduct is harsh, nevertheless, it is not for the court to interfere.

The judgment appealed from is affirmed. No costs to be taxed.

All the Judges concur.