**SECURITY STATE BANK OF SAN JUAN v. STATE.**

No. 9313.

Court of Civil Appeals of Texas. Austin.

Feb. 17, 1943.

Rehearing Denied March 10, 1943.

J. J. Biffle and Claude Pollard, both of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus, Fagan Dickson, and Ocie Speer, Asst. Attys. Gen., for appellee.

McCLENDON, Chief Justice.

Suit by the State to enjoin the Bank (Security State Bank of San Juan) in voluntary liquidation from reopening, and to compel its further liquidation. In a trial to the court the judgment was for the State and the Bank has appealed.

The question presented by the appeal which we regard as paramount is: whether a solvent state bank, that has gone into voluntary liquidation under the provisions of Art. 539, R.C.S., has the right thereafter to resume the banking business without the approval or consent of the Board (State Banking Board).

We believe a chronological statement of the salient facts would best facilitate a clear presentation of the issue involved.

San Juan, a city of 2,264 population (figures herein are of the 1940 census), is in the south central portion of Hidalgo county, in the citrus fruit section of the Rio Grande Valley. It was one of eight closely situated cities in Hidalgo county, on U. S. Highway 83 (from Laredo to Brownsville), located from west to east with population and distances apart as follows: Mission (5,982) six miles from McAllen (11,877) three miles from Pharr (4,784) two miles from San Juan (2,264) two miles from Alamo (1,944) four miles from Donna (4,712) four miles from Weslaco (6,883) five miles from Mercedes (7,624). At Pharr Highway 83 joins Highway 281, extending north to San Antonio and other points. Edinburg (8,718), the county seat, is eight miles north of Pharr on Highway 281. There was a bank at Alamo but none at Pharr; as to the banking situation in the other cities except San Juan the record is silent. The bank was organized in 1920 and had continuously operated as a solvent bank up to March 10, 1941, when it went into voluntary liquidation under circumstances following:

In the summer of 1940 Stone, president of the Bank, consulted McMillan, Deputy Banking Commissioner, with reference to moving the bank from San Juan to Pharr and was advised that this could not be done by amendment to the charter but only by surrendering the charter and obtaining a charter for a bank at Pharr. August 3, 1940, Stone, as president of the Bank, wrote the Attorney General:

"There is pending with Hon. Lee Brady, Banking Commissioner of Texas, an application for a charter for a state bank at Pharr, Texas, which application should soon come before the State Banking Board.

"The proposed bank will be known as Security State Bank of Pharr, Texas, with a capital structure of $60,000.00 and it is the plan of the stockholders and officers of Security State Bank of San Juan, Texas, to liquidate the bank at San Juan, at the earliest practical date, which will eliminate increasing the number of banks in this vicinity. I shall appreciate your giving this application every consideration and upon final consideration granting the charter."

Shortly thereafter Stone conferred with Brady, then Banking Commissioner, who testified:

"He (Stone) said if we would give him a charter at Pharr that he would put into liquidation the bank at San Juan, and the charter was granted on those grounds, and the charter was delivered by Mr. Faulkner, the Departmental Examiner, with definite instructions not to open the new bank except the old one went into liquidation. That was done on March 10th, the new one opened, and the old one went into liquidation on that date.

"Q. Why was that made a consideration? A. Well, from the banker's standpoint—from the Board's standpoint—there wasn't room in the two towns there for two banks. The Board felt, and I felt individually, that one bank could serve the two communities. There is exactly one mile distance between the two banks, from city limit to city limit; there is a mile and a half from bank building to bank building."

He added: "In about thirty days, or less than sixty days after the Pharr bank was opened, I had an application—that is, a formal application, or informal application, from the San Juan citizens to open the bank at San Juan, and I told them I would not recommend it."

The Board granted the application for the Pharr bank charter, which, together with certificate of authority to do business, Art. 382, was delivered by a banking examiner on March 10, 1941, and the Pharr bank was opened for business with Stone as president. Simultaneously the San Juan bank went into voluntary liquidation. Some time later (date not shown) Stone sold his interest in the Pharr bank. September 8, 1941 (just two days before expiration of the six months' period when, under Art. 540, the directors were required to deposit with the State Treasurer the amount of all then unpaid deposits and liabilities), the stockholders unanimously passed a resolution to reopen the Bank. Then followed a number of communications between Stone and banking department officials, in which the latter took the position that the Bank had not the right to reopen. Stone then got the Speaker of the House of Representatives to write a letter to the Attorney General asking for an opinion upon three abstract questions. The letter is not in the record but the questions are copied in the Attorney General's opinion, dated October 18, 1941, and read:

"1. Can a State Bank which is in the hands of the Commissioner for liquidation either voluntarily or otherwise be reopened for business and under what procedure?

"2. Can a State Bank placed in voluntary liquidation by the Board of Directors be reopened and resume business, and if so by what procedure?

"3. Can a State Bank change its domicile from one town to another in this State and by what procedure?"

After answering question 1 (not here pertinent) the opinion reads: "If your question No. 2, however, contemplates a voluntary liquidation by the Board itself of a solvent bank, which has in nowise come into the hands of the Commissioner for liquidation, our answer to that question would be that such solvent bank, even though in the process of self-liquidation, may nevertheless resume its normal banking functions so long as it is solvent. In such a case it would be wise for the Board before resuming business to obtain from the Banking Commissioner his approval, that is to say, making sure that no grounds exist which would justify the Commissioner in taking summary charge of the bank, under Article 369 of the statutes."

After some further negotiations in which the Bank took the position that it had the

legal right, under the Attorney General's opinion, to reopen, the Board, on December 3, 1941, passed the following resolution:

"A call meeting of the State Banking Board was held today at 3 o'clock P.M., in the office of the Attorney General, there being present: Gerald C. Mann, Attorney General and Chairman of the Board, John Q. McAdams, Banking Commissioner of Texas, Secretary of the Board, and Jesse James, State Treasurer of Texas, Member. The purpose of the meeting being to discuss and consider the proposed reopening of the Security State Bank of San Juan, Texas, now in liquidation. Said bank having placed itself in voluntary liquidation pursuant to the Board's suggestion, and as a condition precedent to the granting of a charter to the Security State Bank at Pharr, Texas. The applicants for the Pharr Bank charter and the stockholders thereof, having been the same persons operating the San Juan Bank, voted to dissolve the Security State Bank of San Juan, and which dissolution was certified to the Banking Commissioner simultaneously with the delivery of the charter of the Security State Bank of Pharr, Texas, March 10, 1941, on which date the Pharr Bank opened for business; and,

"Whereas, this Board has been advised that the stockholders and directors of the Security State Bank of San Juan, in liquidation, have determined to reopen said bank without obtaining the approval of the Board or the State Banking Commissioner; and,

"Whereas, the Board is of the opinion that the Security State Bank of San Juan is not entitled to conduct a banking business and the Board should disapprove said Bank;

"It is, therefore, resolved that:

"1. The Security State Bank of San Juan, in liquidation, the officers, directors and stockholders thereof, be notified of the action of this Board with respect to said bank's proposal to resume operation.

"2. Wednesday, December 17, 1941, is hereby designated as the day upon which this Board will hear evidence with respect to all matters affecting the right of the Security State Bank of San Juan to reopen and resume the conduct of a banking business, including the need for a bank in the trade area that would be served by such bank in San Juan, Texas. At such time all persons interested shall be permitted to appear before the Board and be heard upon the subject matter of this resolution.

"The Secretary of this Board is directed to prepare and issue notice of such hearing and shall use his best efforts to get such notice to persons in the trade area surrounding and adjacent to the proposed location of the bank, in order that the Board may be fully advised of the facts and that it may enter its final order herein."

Due notice was given of this hearing which was held on December 17, 1941, and on January 10, 1942, the Board passed the following resolution:

"Whereas, on December 3, 1941, this Board adopted a resolution declaring that in its opinion the Security State Bank of San Juan, in liquidation, is without authority to reopen said bank and conduct a banking business, and directing the Secretary of the Board to notify the officers, directors and stockholders of such bank of the Board's action with respect thereto, and further to notify said persons and other interested persons that on Wednesday, December 17, 1941, the Board would hear evidence with respect to all matters affecting the right of the Security State Bank of San Juan, in liquidation, to re-open and. resume the conduct of a banking business, including the need for a bank in the trade area that would be served by such bank; and

"Whereas, the Board finds that such notice was given as directed and that the officers, directors and stockholders. of said bank were notified by registered mail; and

"Whereas, on the day designated, to-wit, December 17, 1941, the Board heard oral evidence and considered written reports of various people, as well as reports made by its own investigators, and argument as to the legal right of such bank to re-open, and

"Whereas, the Board has heretofore on the 3rd day of December, 1941, entered its order that the Security State Bank of San Juan, Texas, in liquidation, is not entitled to reopen and resume the conduct of a banking business and should be disapproved;

"It is, therefore, resolved that:

"I. Pursuant to Article 369, of the Revised Civil Statutes of Texas, the Board determines that the Security State Bank of San Juan, Texas, in liquidation, is without lawful authority to re-open, and such bank is hereby expressly disapproved.

"II. Said banking corporation, in liquidation, is not entitled under Title 16, of the Revised Civil Statutes of Texas, to conduct a banking business.

"III. The officers, directors and stockholders of said banking corporation, in liquidation, are directed to proceed with the final liquidation thereof, as provided in Article 540 of the Revised Civil Statutes of Texas.

"That the Banking Commissioner, acting himself or by one of his examiners, take charge of all the property and effects of said bank in the event the directions of Section III hereof are not complied with within the time provided by law."

January 15, 1942, the stockholders of the Bank passed another resolution to reopen. This resolution is quite long and recites the previous resolution of September 8, 1941, the Attorney General's opinion, and the various proceedings of the Board. It then, after a resolution as to its solvency, resolves:

"Second: That under the laws of this State dealing with State Banks and corporations generally that this bank has an absolute legal right to resume an active banking business.

"Third: That the State Banking Board is without authority to assume jurisdiction of the affairs of this bank and is without legal authority to prevent its resuming an active banking business.

"Be it further resolved by the Board of Directors that although opening of the bank for active banking business has been postponed from time to time out of respect to the state officials during the pendency of the controversy that at no time was it the intention of the Board of Directors or officers of this bank to waive any legal right in the premises and that now the officers are instructed and directed to open this bank for an active banking business at the very earliest possible date.

"Be it further resolved by the Board of Directors that the officers be and they are hereby empowered and directed to take whatever legal step or steps that may be necessary to maintain this bank's right to operate as an active banking corporation."

Pursuant to this resolution the Bank reopened for business, and on January 29, 1942, this suit was filed. Temporary injunction was issued which was made permanent on final hearing.

Both by the constitution, Art. XVI, Sec. 16, Vernon's Ann.St., and statutes, Art. 492, Vernon's Ann.Civ.St., the banking business is recognized to be charged with a public use and is subject to statutory regulation. The statutory provisions which have bearing upon the instant controversy are the following: Art. 439 creates the State Banking Board, composed of the Attorney General, Treasurer and Banking Commissioner; and gives it general power to regulate, control and supervise state banking corporations, and to "adopt all necessary rules and regulations in harmony with the law affecting the regulation of the same." Art. 347 reads: "The Commissioner shall be superintendent and Instructor of the State Banking System of Texas and of all corporations incorporated under the provisions of this title." Arts. 376-381 provide for issuance of bank charters. The application must be made to the Board, Art. 379, and the Board is required, Art. 380, to "inform itself as to the public necessity of the business of the community in which it is sought to establish the same." If the Board's action is unfavorable the charter is refused, if favorable it is granted and the articles of incorporation filed with the Commissioner, and a certified copy delivered to the incorporators, which must be filed with the county clerk of the county in which the corporation is located, Art. 381. Art. 382 provides for a certificate of authority to do a banking business (issued by the Commissioner), which all banks are required to hold and keep posted in their banking houses. Various articles regulate the conduct of the business, inspection of the banks, their closing and taking over by the Commissioner for insolvency or improper practices, their liquidation, and the reorganization and resumption of business of banks so taken over. These provisions are not here involved, except inferentially. Art. 369 reads: "If an examination made by the Commissioner or by one of his examiners shall disclose that any banking corporation organized under the provisions of this title is insolvent, or that its continuance in business will seriously jeopardize the safety of its depositors or other creditors; or if any such corporation shall make or undertake to make a voluntary assignment of its assets; or if the Banking Board shall disapprove any such bank and shall determine that it is not entitled under this title to conduct a banking business unless such bank goes into voluntary liquidation,

then the Commissioner, acting himself or by one of his examiners, shall immediately close said banking corporation and take charge of all the property and effects thereof."

Arts. 539 and 540 contain the only provisions which relate expressly to voluntary closing and liquidation of solvent banks. These articles authorize such banks to go into voluntary liquidation upon a vote of the stockholders holding two-thirds of the shares, after complying with certain procedural prerequisites. In such cases the board of directors are required to liquidate the bank within six months, at the expiration of which time the amount necessary to pay off then unpaid deposits and liabilities must be deposited with the State Treasurer, and the remaining assets divided ratably among the stockholders. There is no express authorization for reopening such banks nor is there express denial thereof.

■■ If the right to reopen be conceded, still, we are clear in the view that such right is conditioned upon approval of the Board; and that the Board has the authority, when properly exercised, to withhold such approval. This we think follows from the fact that the banking business is affected with a public interest, and the Board is charged with the duty of seeing, at all times, that the business is conducted in accordance with the pertinent statutes, rules and regulations. Where a bank has voluntarily ceased to be a going concern we think it clear that to resume its functions as a banking institution it must obtain the permission of the Board, and where the Board has withheld its permission, and the bank resorts to the courts for redress, the burden is on the bank to show that the action of the Board was arbitrary, illegal or otherwise invalid. Where the action of the Board is predicated upon the determination of a matter confided to its discretion, such action is not subject to judicial review.

■■ In the instant case the only issue involved in the Board's order was whether "the public necessity of the business of the community" warranted a bank at San Juan. The Bank had voluntarily closed its doors with the manifest purpose of obtaining a charter for the bank at Pharr. It is also clear that the Board was motivated by this consideration in approving the charter of the Pharr bank. One of the matters the Board is required to determine (Art. 380) in granting a charter is the "public necessity" of the business of the community in which the bank is to be located, and under Art. 369 the Board is authorized to close a bank if the Board "shall disapprove any such bank and shall determine that it is not entitled under this title to conduct a banking business unless [it] goes into voluntary liquidation." These provisions impose the duty upon the Board of seeing (among other things) that the "public necessity of the business of the community" is subserved both in the original incorporation of the bank and in its subsequent continuance in business. In determining whether a Bank in voluntary liquidation should be permitted to reopen, the same considerations apply as in the case of its original incorporation, including, of course, the "public necessity of the business of the community." At the time the resolution to reopen was passed, a different situation existed with reference to the banking business in the community than that at the time it voluntarily closed. The Pharr bank had been chartered and was in operation. Whether under these conditions the public necessity of the business of the community warranted reopening the Bank was clearly a matter within the exclusive jurisdiction of the Board. There was no attempt to show that the action of the Board was in any way arbitrary, unreasonable, or unwarranted by the factual situation. There was no application by the Bank to reopen. In fact it took the position that it had the legal right to do so, independently of any action of the Board. The Board might, we think, have prevented reopening of the Bank unless and until the Bank had made such application and it had been granted. Be that as it may, the Board took the initiative in the matter and itself ordered and held a hearing. All interested parties were notified and given every opportunity to be heard. The notice, quoted in full above, was full and ample to apprise those interested of the purpose and nature of the hearing. The order of the Board recites a full and fair hearing, and the record conclusively shows the truth of this recital. Conceding the jurisdiction of the Board in the matter, its action unquestionably is not subject to judicial review.

Appellant has briefed the case under eight separate points, the substance of which (other than that already discussed that the Bank had the absolute legal right to reopen) is contained in the following contentions:

560

1. The Board's order of December 17 was void because

a. It contained no fact finding but only conclusions of law, and

b. The requisite statutory procedure was not followed in making it.

2. The pleadings were not sufficient to support a suit for injunction.

■ We think it reasonably clear that the Board's denial of permission to reopen the Bank was predicated upon a finding that "the public necessity of the business of the community" did not warrant the existence of a bank at San Juan at that time. That was the only fact question stated in the notice for the hearing and in the order on the hearing. The notice expressly stated that "this Board will hear evidence with respect to all matters affecting the right of the Security State Bank of San Juan to reopen and resume the conduct of a banking business, *including the need for a bank in the trade area that would be served by such bank in San Juan, Texas.*" (Emphasis added.) The order reiterated this recital, and stated that "the Board heard evidence and considered written reports of various people, as well as reports made by its own investigators, and *arguments* as to the legal right of such bank to reopen." The order then resolved that pursuant to article 369, R.C.S., the Board determined that the Bank "is without lawful authority to reopen, and said bank is hereby expressly disapproved." There was never any question raised regarding the solvency of the Bank or its having violated any statutory or regulatory requirement or that it was guilty of any character of improper practice. The only fact issue involved was the need for a bank at San Juan. Under these circumstances, it would seem that an express "disapproval" of the bank by the Board could have no significance other than that the Board found as a fact that a bank was not needed at San Juan.

■■ Of course, the Board had no power to adjudicate the legal right of the Bank to reopen without its sanction. R. R. Comm. v. Rau, Tex.Civ.App., 45 S.W.2d 413 (error dismissed). But every administrative body must determine for itself whether it has jurisdiction of the matter before it, and especially so when its jurisdiction is challenged. Such determination is a necessary prerequisite to its further proceeding in the matter; but does not constitute a judicial adjudication of its authority. If the Board has no jurisdiction over the subject matter, the order is void. The same is equally true of courts. The recital in the order that (in addition to evidence adduced at the hearing) the Board heard "argument as to the legal right of the bank to re-open" and concluded that it did not have that right constituted merely a recording of what happened before the Board with reference to its jurisdiction over the subject matter which was challenged by the Bank. These recitals added nothing to the validity of the order, nor did they detract in any way from it.

The general principle for which the Bank contends is well established. The most recent text upon the subject (found in the comprehensive treatise on Public Administrative Law, 42 Am.Jur.) states the rule thus: "Apart from statutes requiring findings, an order of an administrative board cannot be sustained unless supported by findings of the basic or quasi-jurisdictional facts conditioning its power." (Page 494, § 149 and supporting authorities in note 5.) The case most strongly relied upon by the Bank is State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291. This case was a direct attack, under recognized Federal procedure, upon an order of the Interstate Commerce Commission fixing both inter and intra state freight rates. With reference to the latter the order was "set aside" upon the holding that the order "with respect to intrastate rates, is not supported by the findings of the commission." Thereafter the commission made another order to the same effect as that set aside, upon more ample findings, which order was sustained. Florida v. United States 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077. Later application for reparations for freight paid under the original order was denied upon the holding that that order was not void but merely voidable upon direct attack, and was effective until set aside. Atlantic C. L. Co. v. Florida, 295 U. S. 301, 55 S.Ct. 713, 717, 79 L.Ed. 1451. The court said (Mr. Justice Cardozo writing): "the order was adjudged void by a decision of this court * * *, but void solely upon the ground that the facts supporting the conclusion were not embodied in the findings. Void in such a context is the equivalent of voidable." The attack upon the order of the Board here is collateral; from which attack the order is immune, if the holding in the Florida case be applied.

--We think, however, it is not essential to a proper adjudication of this case, to determine whether the order is insufficient in factual recital, and, if so, whether it is on that account void or merely voidable. If we are correct in holding that the Bank did not have the right to reopen without the Board's approval, such approval must be shown in order successfully to defend the action by the State to enjoin the exercise of its banking privileges. The fact that the order was voidable or even void, would not supply the necessity of affirmative approval by the Board. United States v. American B. & M. Co., 6 Cir., 31 F.2d 448. If the Bank had alleged and proved that under undisputed facts it had the unqualified legal right to reopen, and that no state of facts existed which would warrant an order of the Board "disapproving" it, we would have a different question. See Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S. W.2d 73. But we do not have that situation here.

What has been said sufficiently disposes of the Bank's contention that the order is void because the statutory procedure was not followed in making it. It is not clear to us just what statutory procedure is referred to. Conceding the Board's jurisdiction in the matter we can conceive of no proper step that was omitted, unless it be the asserted failure to make adequate fact findings—a subject already discussed.

With reference to the sufficiency of the pleadings, it is only necessary to state this is a suit, brought by the Attorney General on behalf of the State against a corporation to enjoin it from exercising its power to do business in violation of law—that is, without having the sanction of the Banking Board, which was a prerequisite to its right lawfully to engage in the business. The constitution, Art. IV, Sec. 22, confers express power upon the Attorney General to "take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power * * * not authorized by law." This power is exclusive. State v. Paris R. Co., 55 Tex. 76; State v. I. & G. N. Ry., 89 Tex. 562, 35 S.W. 1067; American P. L. Co. v. Agey, Tex.Civ.App., 167 S.W.2d 580. The petition clearly asserted that the Bank was not authorized to reopen in that it did not have the sanction of the Board, which was essential to its right to do so; and that the Bank did re-

open and proceed to do a banking business or was attempting so to do, notwithstanding the order of the Board. This, we think, is all it was necessary to allege to sustain the action.

The trial court's judgment is affirmed.

Affirmed.