WALL et al., Plaintiffs v. FENNER et al., Defendants

(76 N.W.2d 722)

(File No. 9540. Opinion filed May 4, 1956)

Rehearing denied June 15, 1956

Phil Saunders, Atty. Gen., **Benjamin D. Mintener** and **W. O. Knight,** Asst. Attys. Gen., for Defendants and Appellants. **Karl Goldsmith,** Pierre, of counsel.

**Frank R. McKenna** and **Milton Cameron,** Sisseton, for Plaintiffs and Respondents.

RENTTO, J. Plaintiffs and three other incorporators filed Articles of Incorporation for the Sisseton State Bank in the office of the Superintendent of Banks, together with an application for the approval thereof. The defendants, who constitute the State Banking Commission, denied the application for the "reason that it appears the public convenience and necessity do not justify the organization of said new bank and that the said City of Sisseton and adjacent territory are now provided with adequate banking facilities". In this proceeding for mandamus the action of the Commission was reviewed by the trial court and a judgment entered commanding the defendants to approve the proposed Articles of Incorporation. This appeal by the Commission is grounded on the claim that the trial court did not confine its review to the question of whether the Commission had abused its discretion in denying the incorporators' application for approval, but went further and substituted its determination for that of the Commission.

State banks are engaged in a business subject to legislative control under the police power. Shaw v. Brisbine, 63 S.D. 470, 260 N.W. 710. That control extends to their inception as well as their subsequent operation. Floyd v. Thornton, 220 S.C. 414, 68 S.E.2d 334. In this day and age the chief function of commercial banks is the furnishing of bank credit which is the circulating medium of exchange by means of which most of the business transactions of this country are conducted. Because of this the stability of bank credit is a matter which concerns not only the stockholders and depositors of a bank, but also most of the other members of the community to the extent that it may be said to be "affected with a public interest". In the exercise of the police power for the public welfare the legislature may adopt such measures as it deems necessary and adapted to the stabilization of such credit. State ex rel. Sharpe v. Smith, 58 S.D. 22, 234 N.W. 764. It is generally recognized that too many banks in one locality are a source of financial weakness. Zollmann Banks & Banking, Vol. 9, § 6092. Our legislature has sought to avoid this evil by providing in SDC

6.0304 that the application for a proposed bank shall not be approved "if the public convenience and necessity do not justify the organization of such bank". This it could properly do. 111 A.L.R. 143.

The legislature could have retained in itself the authority to make this fact determination. The impracticability of such retention is obvious. As an alternative it could properly create an administrative, investigatory, fact finding agency to perform this function, administrative and not judicial in nature. Weer v. Page, 155 Md. 86, 141 A. 518; Pue v. Hood, 222 N.C. 310, 22 S.E.2d 896. That is what our legislature did. SDC 6.0304 makes it the duty of the Commission to determine whether the Articles of Incorporation of a state bank shall be approved or denied. It further provides that "Such application shall not be approved if the provisions of law relating to banks have not been complied with, or if the corporation has been organized for malicious or speculative purposes, or for any purpose other than the legitimate business of banking; or if the public convenience and necessity do not justify the organization of such bank, or if the organizers thereof do not possess the adequate and necessary qualifications and fitness to manage the business of banking". When the Commission acts on an application it must, in carrying out this legislative mandate, determine questions of fact. In making such determination the Commission of necessity exercises a discretion. However this statute does not give to the Commission an unlimited or absolute discretion. Its action must be based on determinations of facts. Du Bois v. Gormley, 189 Ga. 321, 5 S.E.2d 909. It requires the Commission to inquire into specified factual areas thus limiting the Commission's concern to the areas enumerated. These are sufficiently definite standards for the administrativ§e action which the statute authorizes. Weer v. Page, supra.

While the statutes under consideration do not provide for an appeal to the courts from the decision of the Commission a judicial review of its proceedings may be had by mandamus. However when the action under judicial scrutiny involves the exercise of discretion by an administrative officer or agency, the judicial review is limited to

ascertaining whether that discretion has been abused. State ex rel. Cook v. Richards, 61 S.D. 28, 245 N.W. 901, 905. That case enumerates the deviations from proper action which are included in the phrase "abuse of discretion". In Farmers' Loan & Trust Co. v. Hirning, 42 S.D. 52, 172 N.W. 931, 933, this court said: "Where the law requires an administrative officer to make a quasi judicial decision, viz. the determination of a question of fact, mandamus will not lie to control that decision, nor will it reverse such decision, unless it clearly appears that it was so plainly without support in the evidence as to amount to an arbitrary abuse of such quasi judicial authority." This right to attack the decision of the Commission on the ground of an abuse of discretion is available even though the legislature has declared in SDC 6.0205(4) and SDC 6.0304 that the action of the Commission shall be final. State ex rel. White v. Industrial Commission, Ohio App., 40 N.E.2d 453.

 Responsibility for the findings of fact rests on the Commission. The function and inquiry of the Court are limited, in respect of factual findings, to ascertaining whether the findings are supported by competent evidence. It is the function of the Commission and not of the court on review to weigh the evidence and to draw the inferences therefrom. Craig v. Jensen, 66 S.D. 93, 278 N.W. 545; 42 Am.Jur., p. 644, § 217; 73 C.J.S., Public Administrative Bodies and Procedure, § 225, p. 594; State ex. rel. Saari v. State Securities Commission, 149 Minn. 101, 182 N.W. 910; State ex rel. Duluth Clearing House Ass'n v. Department of Commerce, Minn., 73 N.W.2d 790. The court in reviewing such findings may not interfere with the administrative judgment merely because there is ground for a difference of opinion, even though the court may reach a different conclusion. State ex rel. Dybdal v. State Securities Com-Bodies and Procedure, § 225, p. 594; State ex rel. Saari v. State Sec. Comm., supra; In re Commercial State Bank, 105 Neb. 248, 179 N.W. 1021; 73 C.J.S., Public Administrative Bodies and Procedure, § 207, p. 560; 42 Am.Jur., p. 610, § 209. To appreciate the limited scope of judicial review in matters of this kind we must bear in mind the fact that the chartering of banks is an exercise of the police power and is

essentially a legislative and administrative function and not the exercise of a judicial power. State ex rel. Dybdal v. State Sec. Comm., supra; Bank of Italy v. Johnson, 200 Cal. 1, 251 P. 784. Because of this nature of the determination it has been held that the legislature could not constitutionally delegate such function to the courts. Household Finance Corp. v. State, 40 Wash.2d 451, 244 P.2d 260. This basic distinction seems to have been recognized by this court In re Mee, 45 S.D. 303, 187 N.W. 540, 541, where it is written: "Certainly whether another bank should be allowed in this particular banking community, even if not within the absolute discretion of the Banking Department, should not be controlled by the courts unless there is a clear abuse of the discretion and power vested in such Banking Department". See also In re Mee, 45 S.D. 582, 189 N.W. 675. A decision of the Commission carries with it a presumption of correctness and it should not be set aside unless its wrongfulness is clearly shown. St. Charles State Bank V. Wingfield, 36 S.D. 493, 155 N.W. 776; 73 C.J.S., Public Administrative Bodies and Procedure, § 205 p. 556. The burden of establishing this is on the party attacking the decision. 73 C.J.S., Public Administrative Bodies and Procedure, § 206, p. 558; Security State Bank v. State, Tex.Civ.App., 169 S.W.2d 554.

The legislature has not attempted to define the phrase "public convenience and necessity". Nor has it declared where or how or under what circumstances the public convenience and necessity would or would not be promoted by the establishment of a bank. It has left that determination to the Commission. Admittedly this is a difficult determination for anyone but obviously it is one which is better made by persons possessed of experience in the field of banking. The qualifications prescribed for membership on the Commission seem to recognize this. In making this determination the quoted words must be given a meaning consistent with the purpose of the legislative enactment. It is clear that the legislature in entering upon the regulation and control of the banking business was primarily concerned with the creation and maintenance of adequate and sound banking facilities and services. To the extent that

these goals are achieved the public is protected from the evils of unsound and imprudent banking. While the adequacy of existing banking facilities may be considered in the determination of public convenience and necessity it does not follow that because there are adequate banking facilities that public convenience and necessity justifying another bank cannot exist. If such were the case the statute would tend to deter competition and foster monopoly. We are satisfied that this was not the intent of the legislature. State ex rel. Dybdal v. State Sec. Comm., supra; Moran v. Nelson, 322 Mich. 230, 33 N.W.2d 772. Definitions of the phrase "public convenience and necessity" under statutes of other states relative to bank charters are not helpful in formulating a more precise definition because of other differences in the language of those statutes. The same is true of definitions of those words under other regulatory statutes. It seems to us that in these cases the Commission must determine whether the establishment and operation of the proposed bank under existing circumstances and conditions would be consistent with and tend to secure for the public the purposes of the law.

Sisseton, the county seat of Roberts County, has only one bank—the Roberts County National Bank. Plaintiffs in their presentation of this matter to the Commission and before the Court charge that the management of the existing bank, a family enterprise, has used its position as the only bank in the community to improperly promote other businesses in which it is interested. The Commission after investigation admitted there was basis for some of these assertions but did not find the situation as serious as charged. Complaint was also made of the service charges levied by the bank but the Commission found these to be such as are approved by the United States Comptroller of Currency, under whose supervision the bank is operated. It is obvious that the incorporators and their supporters are displeased with the manner in which the present bank conducts its business, and that this feeling in some measure motivates the pending application.

Plaintiffs also contend that much banking business of the area was being done out of the community and even out

of the state. The Commission ascertained that this was not substantial in amount and resulted largely from the limited loaning capacity of local institutions and the nearness of some of these outside banks to the community. They also pointed to the apparent prosperous condition of the banking business in the area but no figures relative to this feature appear in the record. It is apparent that Sisseton has grown and expanded in late years, but it does not appear that the rate of this growth has been more than normal.

 The Commission from its records and investigations had before it these facts, which it also presented to the Court in this matter. In 1921 there were 698 banks in South Dakota and now there are 219 including branch banks and offices. The greater part of this reduction in number resulted from closures occurring before 1930. Between January 14, 1924 and June 1940 Roberts County had 21 banks and 16 of these closed because of insolvency or lack of business. Before June 14, 1924 there were four banks in Sisseton and on that date one of them closed. Thereafter two of the remaining banks consolidated and later merged with the remaining bank. This merged remaining bank failed and there was no bank in Sisseton until 1933 when the present bank moved there from White Rock, South Dakota. This bank has been in continuous operation since its incorporation in 1896. It now has about 1,500 depositors with deposits of about $2,500,000 and loans and discounts of $1,267,000. It has a capital of $25,000 and surplus and undivided profits of $190,000. In 1950 the county had a population of 14,896 and Sisseton a population of 2,873. A major portion of the Sisseton-Wahpeton Indian Reservation is in Roberts County. The county has an Indian population of 1,865 with between 700 and 800 in Sisseton. In South Dakota there is one bank for each 3;823 of population and within Roberts County there is one for each 2,979. At the present time and for more than the last ten years there have been five banks in the county, all of which are independent banks. These banks other than the one in Sisseton, with their town, distance from Sisseton and approximate deposits are as follows: Summit, 25 miles, $700,000; Wilmot, 26 miles, $1,200,000; New Effington, 19 miles, $957,000; Rosholt, 25 miles, $2,100,000.

During the last ten years all of these banks have had a growth in deposits in roughly the same proportions but it does not appear that this growth has been more than normal. The average ratio of deposits to loans and discounts is about 35% over the state. In Roberts County this ratio is exceeded. In addition to the banks in the county there is one at Browns Valley, Minnesota, a mile and one-half east of Roberts County and fifteen miles from Sisseton.

The main industry of Roberts County is a diversified agriculture. The eastern three-fourths of the county contains the better land while that in the western one-fourth is less productive. The towns with banks are distributed throughout the better land area with Sisseton the farthest west, about two miles from the less productive area of the county. The members of the Commission all interviewed numerous residents of Sisseton and reported that a large majority of them did not favor the establishment of a new bank. Some of those interviewed were in favor of such action for varying personal reasons. The members of the Commission have all had long and varied experience in the business of banking in South Dakota and they expressed the opinion that the establishment of the proposed bank would result in two weak banks in the community and that the size of the city and the volume of the banking business in the city and in its adjacent territory did not warrant or justify an additional bank. Many other facts and circumstances were before the Commission and the Court. In view of the limited scope of judicial review in matters of this kind it is unnecessary to detail them. We believe that the facts set out sustain the determination made by the Commission.

In argument plaintiffs support their position by statements of this court in State v. Scougal, 3 S.D. 55, 51 N.W. 858, 15 L.R.A. 477, decided in 1892. That case held in effect that an individual has a common law right to engage in commercial banking and the state may not deprive him of that right under its police power. That question is not presented in this case, but plaintiffs urge upon us the legal reasoning there announced. That reasoning, of questioned validity at the time of its announcement, State ex rel. Goodsill v. Woodmansee, 1 N.D. 246, 46 N.W. 970, 11 L.R.A. 420,

was rejected by Justice Holmes in Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112. That it remains rejected is evident from the text in 9 C.J.S., Banks and Banking, § 5, p. 32, and 7 Am.Jur., p. 28, § 7. While this court in State ex rel. Sharpe v. Smith, supra [58 S.D. 22, 234 N.W. 777], did not have before it the question presented in the Scougal case that decision persuasively rejects the pronouncements here urged. The changes which occurred in our social and economic conditions in the interval between these decisions made bank credit so important in our business transactions that the court was compelled in the latter case to hold that commercial banking was " 'affected with a public interest' ". Continuing changes have served to make it even more important.

It follows that the judgment appealed from must be and is reversed.

All the Judges concur.