ST. CHARLES STATE BANK, Plaintiff, v. WINGFIELD,
Public Examiner, Respondent.

### (155 N. W. 776.)

(File No. 3940.   Opinion filed December 31, 1915.)

1.  **Banks and Banking—Reserves—Designation of Depositary— Power of Directors—Authority of Public Examiner—Statute.**
    The Banking Act of 1915 (Laws 1915, Ch. 102, Art. 2, Sec. 31) vests in all state bank directors, both reserve and others, the right to determine, in their absolute discretion, whether their legal reserves shall be deposited, in whole or in part, in

other banks.    Held, further, that the public examiner is not
given authority to require any part of such reserves to be kept
in vaults of state banks, or to be deposited in other banks,
nor to select or direct the particular bank or banks in which
such reserves as the boards of directors' have elected to make
the subject of reserve deposits, shall be made; and the exer-
cise of the right, by state banks, of selecting their own banks
of deposit, either within or without the state, is subject, by the
Banking Act, to the single limitation, namely, the power of
the public examiner to decline to approve the reserve bank so
selected.

2.  Same—Arbitrary Refusal of Approval of Selected Reserve Deposi-
      tary, Power of Examiner—Power of Judicial Review.

      Nor does the Banking Act vest the public examiner with
    arbitrary and unlimited authority to refuse, without proper
    and sufficient cause, to approve a bank of deposit selected by
    the depositing bank; and a wrongful exercise of such adminis-
    trative authority is subject to judicial review.

3.  Same—Reserve Deposits—Examiner's Refusal of Approval of
      Selected Depositary—Presumption of Proper Action—Showing
      to Contrary.

      Refusal of the public examiner to approve a bank selected
    by a state bank as a depositary of its legal reserve, carries with
    it a strong presumption of proper discharge of his official duty,
    requiring a clear showing that a refusal of such approval was
    not justified by sufficient reasons affecting safety of reserve
    funds, or safe banking practices, in order to justify judicial
    interference.

4.  Same—Keeping Reserve Funds in Banks Within State—Statute—
      Examiner's Order Prohibiting Outside Deposits—Delegation of
      Legislative Power.

      It was not the legislative intent or policy, under the Bank-
    ing Act of 1915, to require state banks, whether reserve or
    non-reserve, to keep within the state, either as a deposit in a
    reserve bank or in its own vaults, any part of its reserve; and
    if the Legislature were to attempt, or had intended, to con-
    fer upon an executive or ministerial officer authority to require
    such reserves to be kept within the state, it would be a dele-
    gation of power in contravention of the state Constitution vest-
    ing all legislative power in the Legislature, or retaining it,
    through the initiative, in the people.    Therefore, held, that
    the order of the public examiner, declaring that state banks
    other than reserve banks, shall keep on deposit within the
    state at least 50 per cent. of their legal reserves, thus for-
    bidding such banks to deposit more than 50 per cent. of their
    legal reserves outside of the state, was without legal authority.

5.  **Banks and Banking—Banking Act—Requirement of Legal Reserve—Legislative Power and Discretion, Tenability of—Approval of Examiner—Safeguarding Deposits.**

    The Banking Act of 1915, wherein it requires that all banks shall keep on hand a certain legal reserve, and that such reserves may be deposited in other banks "approved by the public examiner," is a valid and proper exercise of legislative power and discretion; and the requirement that the depositary banks must first be approved by the public examiner is a proper administrative rule or regulation to safeguard such deposits.

6.  **Same—Examiner's Rules and Regulations—Power to Abridge Banking Powers—Delegation of Legislative Power, Tenability.**

    The Banking Act of 1915 (Laws 1915, Ch. 102,) Sec. 53, conferring upon public examiner, by and with approval of the Governor and Attorney General, power to make such rules and regulations for state bank government as may in his judgment seem wise and expedient, provided that such rules do not conflict with banking laws, and Sec. 54, extending the Act to all state banks, and abridging, enlarging, or modifying the powers, privileges, duties and restrictions of banks, "as each particular case may require, to conform to the provisions of this act," do not confer upon public examiner authority to enact such rules and regulations for government of banks as his judgment may dictate; nor is the authority thus conferred upon the examiner such that the powers, privileges, duties and restrictions conferred and imposed upon banks abridged, enlarged, or modified, to conform to the rules and regulations made by him. To so construe said two sections would be to regard them as constituting a delegation of power to the examiner, by and with consent of the Governor and Attorney General, to legislate upon all matters not within some specific provision of the statute; which imputed power would be contrary to the Constitution wherein it vests all legislative power in the legislative branch of government.

7.  **Same—Bank Reserve Deposits—Examiner's Designation of "Reserve Cities" and Depositaries—Delegated Legislative Power—Statute.**

    The Banking Act of 1915 (Laws 1915, Ch. 102) does not authorize the public examiner to find and declare certain facts or conditions to exist, and, thereupon, to require that all or any of the state bank reserves shall be kept within the state; and such an order of the examiner, and which also designates certain cities in the state as "reserve cities," and confers special rights, privileges, and immunities upon banks within those

cities, involves exercise of legislative power and discretion which cannot be delegated to him by the Legislature; nor is the contention that such order is merely an exercise of discretion in execution of the law embodied in said Act, tenable.

8.   Same—Approval of Banks as Reserve Depositaries—Examiner's Authority—Regulation of Statutory Administrative Duties by.
     The public examiner has authority, under the Banking Act of 1915, to adopt and promulgate any rule or regulation necessary or proper in the discharge of particular administrative duties imposed by the statute, and to exercise reasonable discretion in adoption of administrative rules within the purview of the particular statutory provision imposing the duty, including the approval of banks as reserve depositaries, and in the discharge of this duty he may adopt any reasonable rule as to method of procedure, or the showing required, upon which such approval will be given.

Original proceeding in Supreme Court, by the St. Charles State Bank, of St. Charles, South Dakota, for a writ of prohibition, against J. L. Wingfield, Public Examiner of the State of South Dakota, to prohibit him from enforcing a certain order. Writ granted.

*Bailey & Voorhees, Aikens & Judge, Brown & Brown,* and *French & Orvis,* for Petitioner.

*Lauritz Miller,* and *E. E. Wagner,* for Respondent. ·

(1) To point one of the opinion, Petitioner cited: Laws 1915, Ch. 102, Secs. 31, 32, 53.

Respondent cited: Schaake vs. Dolley, 85 Kan. 598, 118 Pac. 80, 37 L. R. A. (N. S.) 877; Noble State Bank vs. Haskell, 219 U. S. 104, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062; Laws 1915, Ch. 102, Art. 1, Secs. 1, 4, 9; Art. 2, Secs. 14, 31, 53, 54.

(4) To point four of the opinion, Petitioner cited: State v. Scougal, 3 S. D. 55, 51 N. W. 858.

(6) To point six of the opinion, Petitioner cited: Phoenix Ins. Co. v. Perkins, 19 S. D. 59, 101 N. W. 1110; Dowling v. Ins. Co., (Wis.) 65 N. W. 738; Anderson v. Ins. Co., (Minn.) 63 N. W. 241.

Respondent cited: United States vs. Grimaud, 220 U. S. 506, 55 L. Ed. 263.

(7) To point seven of the opinion, Petitioner submitted that: The order in question is void as an unconstitutional attempt to confer legislative power upon a public officer, and cited: Cin-

cinnati & W. & Z. Ry. Co. v. Clinton Co. Common., 1 Ohio St. 88; Field v. Clark, 143 U. S. 650; Dowling v. Ins. Co., (Wis.) 65 N. W. 738; State v. Bugde, 14 N. D. 532, 105 N. W. 724; State v. Perkins, 19 S. D. 59, 101 N. W. 1110; Cooley Const. Limitations, (5th Ed.) p. 139; O'Niel v. Ins. Co., 166 Pa. 73, 30 Atl. 945; State v. Simons, 32 Minn. 540, 21 N. W. 750; State v. Ashbrook, 164 Mo. 375, 55 S. W. 637; Hitchcock v. Galveston, 96 U. S. 341; Harrisonburg v. Roller, 97 Va. 582; Minn. Gas. Light Co. v. Minneapolis, 36 Minn. 159, 30 N. W. 540; Thompson v. Schermerhorn, 6 N. Y. 95; Birdsall v. Clark, 73 N. Y. 73.

Respondent cited: United States v. Williams, 6 Mont. 379, 12 Pac. 851; Davenport v. Elrod, 20 S. D. 567; Butterfield v. Stranahan, 192 U. S. 470; Union Bridge Co. v. U. S., 204 U. S. 364; U. S. v. Bale, 156 Fed. 627; State v. Struble, 19 S. D. 646; Sutherland on Statutory Construction, p. 70.

SMITH, J.   Plaintiff, the St. Charles State Bank, brings this proceeding seeking to prohibit respondent as public examiner from putting into effect a certain order, the material portions of which are hereinafter set forth.

We think it necessary to consider but two of the six objections to the order urged by petitioner as grounds of relief. One of these is, that the order is in conflict with section 31, art. 2, c. 102, Laws 1915, hereinafter referred to as the Banking Act; the other, that the order, if not in conflict with the statute, is in contravention of section 1, art. 3 of the state Constitution.   Section 1 of the order provides that, all banks (other than national banks) authorized to do business in this state—

"shall keep on deposit within the state of South Dakota, in banks organized and existing under and by virtue of the laws of South Dakota, or in banks that may hereafter be organized and authorized to engage in the business of banking in South Dakota, a sum of money equal to fifty per cent. (50%) of its legal reserve."

Section 2 of the order in substance provides, that all state banks now or hereafter existing under the laws of this state, which banks now are or hereafter may be located in reserve cities—

"may keep their respective reserves in either state or national banks within the state of South Dakota, or in any other state, which banks have been approved by the public examiner as re-

serve depositaries, provided that the amount deposited with any
reserve depositary shall not exceed twenty-five per cent. (25%)
of the amount shown by the books of any such bank to be 'Due
from Banks' and that this limitation shall not apply or extend to
banks organized and existing under the laws of the state of South
Dakota; and provided further that banks now located, existing
and doing business within reserve cities hereinafter designated
and in cities that may hereafter be designated by the public ex-
aminer as reserve cities, and banks that may hereafter be au-
thorized to engage in the business of banking in such cities, shall
not negotiate or open up or carry an exchange account with any
depositary bank without first having obtained a certificate from
the public examiner designating and approving such depositary
or depositaries."

Section 3 of the order designates nine cities within the state
as "reserve cities."

The Banking Act itself recognizes two classes of banks by
prescribing different reserves for reserve banks, and for other
banks, but it does not further differentiate the two classes, or con-
fer on one class any other rights, privileges, or immunities which
do not belong equally to the other class. The order of the public
examiner places important additional limitations and restrictions
upon the transactions of both classes of banks. It requires that
all state banks *not reserve banks,* shall keep on deposit at all times
at least one-half of their legal reserve *in banks within the state.*
As to reserve banks, the effect of the order, as limited by the
first proviso, is, that they are given two options: First, to deposit
their reserves in other approved banks *within the state,* without
any restriction as to the *amount of reserve* which may be placed
in any one *state bank;* second, to deposit reserves in any approved
national bank in the state, or in any approved bank outside the
state. But in the exercise of the latter option they are forbidden
to deposit in any one national bank in the state, or in any one
bank outside the state, an amount greater than one-fourth of the
amount "Due from Banks."

A careful consideration and analysis of the entire order leads
us to the conclusion that it is the *place of the deposit,* and not the
amount of the reserve, which the order of the public examiner
seeks to control. The general purpose sought to be attained by

the order appears to be the keeping within the state of at least one-half of the bulk of the reserve of state banks.   This purpose is made quite clear by that provision of the order which directs and specifically requires that all state banks *not reserve banks shall keep* at least one-half of their reserves on deposit in state banks, and the other provision which permits reserve banks to deposit their entire reserves in one or more state banks, but denies the right to deposit in any one bank ouside the state an amount exceeding one-quarter of the entire deposits of the reserve banks.

[1] Section 31 of the Banking Act vests in the boards of directors of all state banks, both reserve banks and others, the right to determine in their absolute discretion, whether their legal reserves shall be deposited, in whole or in part, in other banks The public examiner is not given authority to require such reserves or any part thereof, to be kept in the vaults of state banks, or to be deposited in other banks, nor does the statute give him any authority, in case boards of directors elect to deposit their reserves or some portion thereof in other banks, to select or direct the particular bank or banks in which such deposits shall be made.   Nowhere in the act do we find anything indicating that the Legislature intended to deprive state banks of the right heretofore exercised, of selecting their own banks of deposit, either with or without the state.   The exercise of this right is subject by the Banking Act itself, to a single limitation, namely, the power of the public examiner to decline to approve the reserve bank selected.   The statute by implication, requires such approval before reserve deposits are made.   We are clearly of opinion that the Legislature, in enacting the Banking Act, did not intend to take away or limit the right of state banks to transact their business in the usual and ordinary way, except where particular acts or things are required to safeguard the funds of such banks.

[2, 3] Clearly, therefore, it was not the purpose of the act to vest the public examiner with arbitrary and unlimited authority to refuse, without proper and sufficient cause, to approve a bank of deposit selected by the depostiting bank, and we are of opinion that a wrongful exercise of such administrative authority would be subject to judicial review.   But such refusal, under a rule long recognized by this court, would always carry with it a strong presumption of a proper discharge of official duty on the part of the

public examiner, and would require a clear showing that a refusal to approve a bank so selected was not justified by sufficient reasons affecting the safety of reserve funds, or safe banking practices.

[4] We reach the conclusion, therefore, that it was not the legislative intent or policy, as disclosed by the Banking Act to *require* any state bank, whether reserve or non-reserve, to keep *within the state*, either as a deposit in reserve banks or in its own vaults, any part of its reserve. Such a requirement would certainly involve an exercise of the highest legislative discretion, and if it were clear that the Legislature had attempted or intended to confer upon an executive or ministerial officer authority to require reserves of any bank to be kept within the state, it would be a delegation of power in contravention of those provisions of the state Constitution which vest all legislative power in the legislative branch of the government, or retain it through the initiative, in the people themselves. Section 1 of the order in direct and unmistakable language declares that at least one class of state banks, viz., those not reserve banks, *shall keep on deposit within the state* at least 50 per cent. of the legal reserves. Such banks are thus absolutely forbidden to deposit more than 50 per cent. of their legal reserves in any bank outside the state.

[5] The Banking Act requires that all banks shall keep on hand a legal reserve. Such statutory requirement is a valid and proper exercise of legislative power and discretion. Respondent's counsel say in their brief:

"The legal reserve is that portion of the bank's funds with which the everyday transactions of the bank are conducted."

That such a fund is one of the essentials to the proper protection of the public against injudicious and unsafe banking practices cannot be doubted. The power of the Legislature to require such a fund, and to provide for its safe-keeping under proper administrative rules and regulations, can hardly be questioned. The Banking Act is such a law. It declares that all state banks shall keep on hand certain reserves, and that such reserves may be deposited in other banks "approved by the public examiner," but does not declare that such deposits may only be made in state banks or banks within the state. As an administrative rule or regulation to safe-guard such deposits, the statute does require

that depositary banks must first be approved by the public examiner.

[6] No further power or authority is given him in the matter of reserve deposits, unless it be conferred by the provisions of sections 53 and 54 of the Banking Act. Respondent contends that these sections vest the public examiner with authority to make the order which is challenged in this proceeding. These sections are:

"Sec. 53. *Public Examiner May Make Rules—How.*—The public examiner by and with the approval of the Governor and the Attorney General, shall have power to make such rules and regulations for the government of the banks of this state as may in his judgment seem wise and expedient; Provided, that no such rules or regulations shall in any way conflict with any of the laws made for the control of such banks.

"Sec. 54. *All Banks Subject to Provisions of Act.*—The provisions of this act shall extend to and govern all banks existing and doing business within the state and all banks that may hereafter engage in the business. All the powers, privileges, duties and restrictions conferred and imposed upon any bank existing and doing business under the laws of this state, are hereby abridged, enlarged or modified as each particular case may require, to conform to the provisions of this act."

As construed by respondent, these sections taken together, confer upon the public examiner authority to enact such rules and regulations for the government of banks as in his judgment seem wise and expedient, covering all matters which the Legislature itself has not covered by some particular provision of the statute, and that the powers, privileges, duties and restrictions conferred and imposed upon banks doing business under the laws of this state are abridged, enlarged, or modified as the case may require, to conform to the rules and regulations made by the public examiner. Such a construction is equivalent to saying that the Legislature, by section 54, has attempted in advance to enact into laws, or to give the force and effect of laws to such rules and regulations as the public examiner may deem wise and expedient, covering any matters touching the government of banks, not governed by some specific provision of the Banking Act itself. So construed, the two sections constitute a delegation of power to the public examiner, by and with the consent of the Governor and

Attorney General, to legislate upon all matters not within some specific provision of statute.

No citations or discussion of authorities is necessary to demonstrate the unconstitutionality of an attempted delegation of legislative power, under constitutional provisions such as we have in this state, which vest the entire legislative power in the legislative branch of the government. If such a delegation of power could be made, it would be sufficient for the Legislature to enact a law declaring that:

"The safe and proper conduct of the banking business in the state of South Dakota requires rules and regulations for the government of banks, which rules and regulations may be made and promulgated by the public examiner, with the advice and consent of the Governor and Attorney General."

Or the Legislature might enact a law declaring that:

"The preservation, propagation, protection, taking, using and transportation of game and fish within the state require proper rules and regulations, and the game warden shall have power to make rules and regulations for the government of such matters as may in his judgment seem wise and expedient: *Provided* that no such rules or regulations shall *conflict* in any way with any existing laws."

Suppose the only other law on the statute books was one forbidding the transportation of game and fish out of the state. Could the game warden make rules and regulations governing the transportation of game and fish *within* the state, and also governing the preservation, propagation, protection, taking, and using of game fish within the state? As said by the Wisconsin court, the effect of such statutes would clearly be to transfer to an administrative officer "bodily, the legislative power of the state on that subject."

We apprehend no lawyer familiar with the provisions of our state Constitution would undertake to sustain such enactments. Phenix Ins. Co. v. Perkins, 19 S. D. 59-68, 101 N. W. 1110; Ex parte Hawley, 22 S. D. 23, 115 N. W. 93, 15 L. R. A. (N. S.) 138; King v. Concordia Fire Ins. Co., 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87; Brookings County v. Murphy, 23 S. D. 311, 121 N. W. 793; Davenport v. Elrod, 20 S. D. 576, 107 N. W. 833.

In the Brookings County case this court said:

"Under constitutional provisions of this character, it is held by practically all the courts that the Legislature cannot abdicate or delegate its authority, and that no legislative power can be conferred by an act of the Legislature upon any of the other departments of the government, or upon any other body or authority."

[7] Respondent's counsel concede that the order of the public examiner imposes upon state banks a restriction upon the exercise of ordinary banking powers which is not found in the Banking Act, namely, that nonreserve banks must keep in their vaults or deposit within the state at least 50 per cent. of their reserves. But respondent contends that this is an administrative regulation whereby such reserves will be so kept as to insure that the banking business shall be carried on in a safe, conservative, and businesslike manner, which is the purpose intended to be acaccomplished by the Banking Act; that the making of such a regulation is not the exercise of legislative power to make a law, which involves discretion as to what the law shall be, but is merely an exercise of discretion in the execution of the law embodied in the Banking Act.

The principle involved in this distinction is universally recognized, but controversies frequently arise in its application. The rule is clearly stated in Cincinnati, etc., R. Co. v. Clinton County, 1 Ohio St. 88, an authority frequently cited in the decisions and by text-writers:

"The true distinction, * * * is, between the delegation of power to *make the law*, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, *to be exercised under and in pursuance of the law*." (The italics are ours.)

But the precise point at which the exercise of the legislative will ceases, and the executive or administrative will becomes operative, is not always easily determined. The question whether a certain act done by an administrative officer under a statute authorizing it, involved an exercise of administrative or legislative power, was under discussion by the Supreme Court of Michigan, in King v. Concordia Ins. Co., supra. In that state a constitutional provision exists similar to our own. The Michigan statute

empowered a commission thereby created to draft a form of fire insurance policy to be known as the "Michigan Standard Policy," which was to be filed in the office of the Commisisoner of Insurance. The form of policy was required to be—

"so worded and printed as to secure a fair and practicable accomplishment of the following results, viz.; 'First. Fairness and equity between the insurers and the assured. Second. Brevity and simplicity. Third, The avoidance of technical words and phrases. Fourth. The avoidance of conditions, the violation of which by the assured would, without being prejudicial to the insurrer, render the policy void or voidable at the option of the insurer. Fifth, The use of as large and fair type as is consistent with a convenient size of paper or parchment. Sixth. The placing of each separate condition in a separate paragraph, and the numbering of the paragraphs."

The act also empowered the commission to alter or amend the form so adopted by them "whenever they shall deem it necessary," and gave the commissioner of insurance authority to fix the time when the use of the policy, adopted or amended, should become obligatory, and prohibited the making of insurance contracts except in accordance with the form so prescribed. The question before the court was whether the act conferred upon the commission legislative power, or was an authority to adopt an administrative regulation. The court said:

"Was the power which this statute delegated to the insurance commission legislative in character? It certainly was a power which the Legislature itself might rightfully exercise, but it does not follow from this circumstance that it was a legislative power. * * * for the Legislature often exercises powers of an executive or administrative character which it may delegate. * * * The proper distinction between such delegated power and legislative power is stated in Locke's Appeal, 72 Pa. 498 [13 Am. Rep. 716] as follows: 'The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' * * * Tested by this distinction, the authority delegated to the insurance commission by the legislation under consideration was not administrative, but was legislative. It cannot be said that the Legislature merely

delegated to the commission power to determine 'a fact or state of things upon which the law makes, or intends to make, its own action to depend'; nor that it merely delegated to the commission 'discretion as to its execution to be exercised under and in pursuance of the law.' On the contrary, it delegated to the commission authority to itself make the law (which was to be evidenced by the form of insurance policy filed with the commissioner of insurance)' and to change this law 'whenever they shall deem it necessary.' "

Quoting with approval from the decision in Dowling v. Lancashire Fire Ins. Co., 92 Wis. 73, 65 N. W. 741, 31 L. R. A. 112, where a similar statute was under discussion, the Michigan court further says:

"Within the lines indicated, a discretion was reposed in the commissioner as to the form of the policy which embodied the substance of the contract, and which was to have the sanction and force of law. The effect, clearly, was to transfer to him bodily the legislative power of the state on that subject."

The Banking Act does not provide that when the public examiner shall find and declare certain facts or conditions to exist, the whole or some portion of the reserves of state banks shall be kept within the state, Neither does it attempt to confer upon the public examiner authority to ascertain and declare facts or conditions as to cities within the state, whereupon certain cities shall become "reserve cities," and banks within such cities shall become "reserve banks."

Whether under the state Constitution the Legislature itself could have declared that certain cities should be "reserve cities," and the banks in those cities should be given rights, privileges, or immunities different from those conferred upon all other state banks, we find it unnecessary to determine in this case. But we are clearly of the view that an order of the public examiner which directly declares that bank reserves in whole or in part shall be kept within the state, and designates certain cities as "reserve cities," and confers special rights, privileges, and immunities upon banks within those cities does involve an exercise of legislative power and discretion which cannot be delegated. Further than this we find it unnecessary to go.

[8] In holding this particular rule promulgated by the pub-

lic examiner to be void, we are not to be understood as denying the public examiner full authority to adopt and promulgate any rule or regulation necessary or proper in the discharge of particular *administrative duties imposed by the statute.* In all such matters he may properly exercise reasonable discretion in the adoption of administrative rules within the purview of the particular provision of the statute which imposes the duty. By way of illustration, the statute imposes upon the public examiner the duty and authority to approve banks as reserve depositaries. In the discharge of this duty he may adopt any reasonable rule as to the method of procedure, or the showing required, upon which such approval will be given.

Many decisions are cited by respondent's counsel in which executive and administrative rules and regulations are given, or are held to have the force and effect of laws. But in all these cases, except in those states whose Constitutions permit a delegation of legislative power, it will be found that the making of such rules and regulations did not involve an exercise of legislative power; that such administrative rules and regulations were within the authority conferred by legislative act, upon executive or administrative officers making them, and that the Legislature itself had declared a violation of such rules and regulations to constitute a criminal act; or that an observance of such rules and regulations was required by statute, in the creation of contract or other rights or obligations. We are forced to the conclusion that the order of the public examiner is void for the reason that it is an exercise of legislative, and not administrative, discretion.

The relief demanded by petitioner must therefore be granted; and it will be so ordered.