**In the Matter of the Application of TRADE DEVELOPMENT BANK.**

**No. 15014.**

Supreme Court of South Dakota.

Argued Nov. 20, 1985.

Decided Feb. 19, 1986.

Ronald G. Schmidt, of Schmidt, Schroyer, Colwill & Zinter, P.C., Pierre, for appellant, Independent Community Bankers Ass'n of South Dakota, Inc.

Jeremiah Murphy, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellee, Trade Development Bank.

**1.** SDCL 51–16–14 provides:

The commission shall have the power to adopt all necessary rules and regulations not inconsistent with the laws of this state, for the management and administration of banks and other banking entities, their subsidiaries and affiliates, over which it has jurisdiction as set forth in this title, and to regulate its own procedure and practice, which rules shall be promulgated pursuant to chapter 1–26. Rules relating to paying interest on deposits or similar obligations as required by § 51–22–11 may be passed as emergency rules and are not subject to subdivision (3) of § 1–26–5. The commission shall, by publication in three legal newspapers of general circulation in different parts of the state, give at least seven days' notice of the hearing to enact such rules. Such rules shall become effective immediately upon the adoption thereof and filing with the secretary of state.

SDCL 51–15–1 provides, in pertinent part:

Terms used in this title, unless the context otherwise requires, shall mean:

(1) "Banking," the business of receiving deposits, discounting commercial paper, or buying and selling exchange, and any other activity authorized by this title; ...

(5) "Bank," any corporation authorized under this title to engage in the business of banking

William Srstka, Jr., of Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, for appellee, South Dakota Banking Com'n.

FOSHEIM, Chief Justice.

Independent Community Bankers Association of South Dakota, Inc., (Independent Bankers) appeals from a circuit decision which recognizes the South Dakota Banking Commission's (Commission) authority to create and define a "special purpose bank." We reverse.

On July 11, 1984, Commission gave notice of its intent to adopt or amend the following two administrative rules:

*20:07:12:01 Special purpose bank defined. A special purpose bank is a bank that has the powers defined in SDCL 51–15–1(1) and (5) except that it cannot take deposits from the general public.*

*General Authority:* SDCL 51–16–14 [1]
*Law Implemented:* SDCL 51–15–1,[1] 51–16–14

*20:07:10:05 Conditions of Approval.* The commission shall condition its approval of new banks, branch banks, de-

or in the combined business of a bank and trust company; ...

(7) "Branch bank," a branch place of business maintained by a bank for conduct of banking;

(8) "Branch office," a branch place of business maintained by a bank within the county of its domicile or an adjoining county to receive deposits, issue drafts and cashiers' checks, make change, pay checks, and other clerical and routine functions, but not including making loans and discounts; ...

(13) "Bank holding company," a bank holding company as defined in 12 U.S.C. Sec. 1841, as amended as of January 1, 1981;

(14) "Trust service office," a state or national bank or trust company offering trust services to the public under the auspices of another state or national bank or trust company which is the vendor of the trust service and which vendor has complied with the trust provisions of this title.

SDCL 51–17–16 provides:

Within one year after the filing of an application the commission shall consider the director's findings and recommendations and all other available relevant information and shall in its discretion approve or disapprove the application, which action shall be subject to appeal.

tached drive-in facilities, and moves of office on possession by the bank of federal deposit insurance corporation insurance of accounts or a similar insurance approved by the commission and the approval of the application by the federal deposit insurance corporation or federal reserve bank. *This section does not apply to the approval of a special purpose bank.*

> General Authority:  SDCL 51–16–14
> Law Implemented:  SDCL 51–15–1, 51–17–16 [1]

On August 1, 1984, Trade Development Bank (Trade Development) filed an application seeking Commission's approval of a charter for a "special purpose bank" under the proposed rules. The hearing on the adoption of the rules was held on August 9, 1984, and the rules became effective October 9, 1984.

Pursuant to the notice of the hearing on the application, the Independent Bankers requested, by letter, that they be allowed to become a party in opposition. The request was granted. Trade Development objected, however, and claimed that Independent Bankers had failed to show "a pecuniary interest [that] would be directly and immediately affected," as required by SDCL 1–26–17.1 for a non original party to intervene.[2] Independent Bankers made a motion to dismiss the application on jurisdictional grounds. They argue that Commission was unauthorized as a matter of law to redefine "bank," which is already defined by SDCL 51–15–1.

A hearing on Trade Development's application was held October 2, 1984. Commission entered Findings of Fact and Conclu-sions of Law and a decision was made granting Trade Development's application on November 29, 1984. Independent Bankers objected and took exception to several provisions. An appeal to the circuit court was made and oral argument held. Commission's decision was affirmed and Independent Bankers appeal.

## I.

■ Trade Development initially argues that Independent Bankers have no standing to intervene. The record reveals no objection by Trade Development to the findings and conclusions of Commission which recognized Independent Bankers' standing to intervene. Further, the record does not contain a notice of review by Trade Development to the circuit court on appeal under SDCL 1–26–36.1 or a notice of review to the Supreme Court on appeal under SDCL 15–26A–22. This question, therefore, is not preserved on appeal. *In re Application of Northwestern Bell Telephone Co.*, 326 N.W.2d 100, 104 (S.D.1982); *State v. Holland*, 346 N.W.2d 302, 306 (S.D.1984).

## II.

There is no specific legislative grant of authority to Commission to create classifications of banks. *See* SDCL title 51. Silence alone is insufficient. Therefore, the key question we address is whether the creation of this new "special purpose bank" exceeded authority delegated by statute[3] to Commission for the "management and administration" of banks or in the charter application process for banks and banking entities. SDCL §§ 51–16–14, –15; 51–17–15, –16.[4]

---

2. Subsequent to the hearing on October 2, 1984, Independent Bankers filed a copy of Commission's findings in other cases in which Independent Banker's pecuniary interest, entitling them to be a party in opposition to a bank charter application, was recognized. They requested that this filing be incorporated by reference into the present proceedings. Trade Development objected to the timeliness and relevancy of this request. Commission took no further action which jeopardized Independent Bankers' standing as a party in opposition.

3. Interpretation of statutes is a question of law which we may independently review. *Nash Finch Co. v. South Dakota Department of Revenue*, 312 N.W.2d 470, 472 (S.D.1981); *In re Public Utilities Commission Declaratory Ruling (F–3436)*, 364 N.W.2d 124, 126 (S.D.1985).

4. SDCL 51–16–15 provides:
   The commission shall pass upon every application to organize a bank under the laws of this state, every plan of bank reorganization or consolidation and every application to establish a branch bank, and the action of the commission

In *St. Charles Bank v. Wingfield,* 36 S.D. 493, 155 N.W. 776 (1915), this court held that the Banking Act of 1915, §§ 53–54, providing for the making of rules for the "government"[5] of banks, did not confer on the bank examiner the authority to enact rules and regulations as his judgment may dictate encompassing all matters not covered by some particular provision of the statute. To confer such authority would have delegated legislative power in contravention of the State Constitution. *Id.* at 500, 155 N.W. at 778. The examiner could, however, adopt and promulgate any rule necessary or proper in the discharge of particular, imposed administrative duties. *Id.* at 506, 155 N.W. at 780.

In *Livestock State Bank v. State Banking Commission,* 80 S.D. 491, 127 N.W.2d 139 (1964), we held that a rule prohibiting branch banks more than 50 miles from a main bank was an unlawful attempt by Commission to exercise legislative powers. Since the legislature by statute had put restrictions on the location of branch banks, there was an implied legislative intent to exclude other restrictions under the rule of express mention and implied exclusion. *Id.* at 495, 127 N.W.2d at 141. "By

adopting [the branch bank rule] the Commission attempted to put into effect a policy on branch banking that was not written into the law by the legislature and thus enlarged upon the statutory requirements for establishment of branch banks. Rules adopted by administrative agencies under such conditions are invalid." *Id.*

Commission's broad reliance on *Wall v. Fenner,* 76 S.D. 252, 76 N.W.2d 722 (1956), is misplaced. In *Wall,* this court recognized that the Legislature had given Commission a discretionary fact finding authority relative to bank application approval, a power it could have retained in itself. *Id.* at 256, 76 N.W.2d at 724. We held that when Commission acts on applications, it must do so based on determinations of fact. *Id.* However, Commission's concern was still limited to the specified, factual areas enumerated. *Id.*

These banking cases recognize the expertise of Commission. *See, e.g., In re Application of Southern Hills Bank,* 339 N.W.2d 310 (S.D.1983). But Commission is not endowed with carte blanche authority. The laws implemented and general authori-

on every such application shall be final, subject to chapter 1–26. Whenever the application involves establishment of any kind of competitive banking service in the trade territory of a bank in which any banking commission is interested he shall be deemed disqualified and the commission shall be recomposed as provided in § 51–16–11.
SDCL 51–17–15 provides:
Within ninety days of the receipt of the application required in § 51–17–12, except when the state banking commission orders that a longer time is necessary, the director of the division of banking and finance shall investigate and make a report of the following:
(1) The character, reputation and financial standing of the organizers or incorporators and their motives in seeking to organize the proposed state bank;
(2) Repealed by SL 1981, ch 346, § 23.
(3) The character, financial responsibility, business experience and standing in the community of the prospective stockholders and of those proposed as directors of the bank;
(4) The need in the community where the bank would be located for banking or banking and trust facilities, or additional banking or banking and trust facilities as the case may

be, giving particular consideration to the adequacy of existing bank and trust facilities in the community;
(5) The ability of the community to support the proposed bank, giving consideration to:
(a) The competition offered by existing banks;
(b) The banking history of the community;
(c) The opportunities for profitable employment of bank funds as indicated by the average demand for credit, the number of potential depositors, the volume of bank transactions, and the business and industries of the community, with particular regard for their stability, diversification and size; and
(d) If the bank is to exercise trust powers, the opportunities for profitable employment of fiduciary services;
(6) Such other facts and circumstances bearing on the proposed bank and its relation to the community as in the opinion of the director or the commission may be relevant.
The director shall submit such report, together with all other pertinent information in his possession, to the commission for its consideration pursuant to § 51–17–16.

5. This term is broader than "management and administration" found in SDCL 51–16–14.

ties, cited by Commission as their authorization to create a "special purpose bank," do not mention any discretion granted to the Commission in the creation or definition of banks. *See* SDCL §§ 51–15–1, 51–16–14, and 51–17–16. Similarly, there are no "loopholes" in the present definitions statute which necessitates that Commission supplement it for effective "management and administration" of banks. *See* SDCL 51–15–1.

We are likewise unable to find sufficient authority to create a "special purpose bank" in Commission's discretionary powers in the application process. This particular fact finding authority, found at SDCL §§ 51–17–15 and –16, specifically lists information to be gathered by the director; it does not contemplate consideration of banking powers the applicant proposes to pursue. Ultimately, it is impossible to take this fact-finding power and say that it includes a broad power to create new categories of banks. We abide with caution and limitation. If a broader power is desired, it can be readily created by the Legislature.

■ We, therefore, conclude that Commission was without authority to create or define a "special purpose bank" by regulation and reverse the decision of the circuit court. Since this issue is dispositive, we find it unnecessary to address other issues raised by Independent Bankers.

MORGAN and HENDERSON, JJ., HERTZ, Acting Justice, and DUNN, Retired Justice, concur.

DUNN, Retired Justice, sitting for WUEST, Justice, disqualified.