In re TRADE FINANCE BANK,
a corporation, Tax ID: 93–
0935826, Debtor.

A. Thomas POKELA, Interim
Trustee, Plaintiff,

v.

Arieh GILDOR, James Cope, Al Kurten-
bach, Rick O. Johnson, Galen Hadley,
Dale Clement, Ted Muenster, Sean
O'Neill, and Bonnie London, Defen-
dants.

Bankruptcy No. 89–40119.
Adv. No. 92–4056.

United States Bankruptcy Court,
D. South Dakota, S.D.

Feb. 10, 1994.

A. Thomas Pokela, Sioux Falls, SD, plain-tiff interim trustee.

Robert M. Ronayne, Aberdeen, SD, for plaintiff Interim Trustee A. Thomas Pokela.

Vance R.C. Goldammer, Sioux Falls, SD, for defendants James Cope, Al Kurtenbach, Rick O. Johnson, Galen Hadley, Dale Clement and Ted Muenster.

Arieh Gildor, defendant, pro se.

PEDER K. ECKER, Bankruptcy Judge.

A jurisdictional challenge is made to Trade Finance Bank's [hereinafter "Debtor's"] eligi-

bility as a Chapter 7 debtor based on the following provision:

> A person may be a debtor under chapter 7 of this title only if such person is not a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h))....

11 U.S.C. § 109(b)(2). The Court must determine if Debtor, a state-chartered "merchant bank," is a "bank" under Section 109(b)(2). The issue is raised in a Motion to Dismiss of Defendants James Cope, Al Kurtenbach, Rick O. Johnson, Galen Hadley, Dale Clement, and Ted Muenster [hereinafter "Motion to Dismiss"] filed by Sioux Falls Attorney Vance R.C. Goldammer on behalf of these defendants [hereinafter "Movants"] and objected to by Aberdeen Attorney Robert M. Ronayne on behalf of Plaintiff A. Thomas Pokela, Interim Trustee [hereinafter "Interim Trustee"], and by Pro Se Defendant Arieh Gildor. Following an evidentiary hearing, the Court took the matter under advisement and issued a scheduling order for submitting written argument and authority. This letter decision constitutes Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## BACKGROUND

Debtor filed a voluntary Chapter 11 bankruptcy petition March 13, 1989. The case was converted to a Chapter 7 liquidation proceeding August 29, 1989, and, on December 2, 1992, the Interim Trustee named the members of the board of directors of Debtor's corporation as defendants in a three-count adversary complaint requesting they be held jointly and severally liable for damages resulting from negligently operating the bank in a unsafe, unsound manner.[1] The complaint is based on violations of state lending statutes, alleging defendants extended loans or credit exceeding more than 20% of Debtor's capital stock and surplus and more than 10% of its undivided profits and granted insider loans or credit to the directors, executive officers, and/or significant shareholders which exceeded 50% of the capital stock and surplus.[2] On April 22, 1993, the complaint was amended to add a fourth cause of action for breach of fiduciary duty, along with a prayer that the defendants be held jointly and severally liable for uncollectible loans made as a proximate result of their negligence. In total, the complaint requests damages of $3,418,518.89.

Following a pre-trial conference and extended period of discovery, the Motion to Dismiss was filed August 25, 1993, stating that, as a bank, Debtor is not eligible for bankruptcy relief. Debtor was chartered as a merchant bank pursuant to South Dakota's "Banks and Banking" title (Title 51), a title which provides for Debtor's regulation by the State Banking Commission and which sets forth a liquidation scheme in the event of Debtor's insolvency.[3] According to a "state classification test" adopted by the Eighth Circuit Court of Appeals in *First AM. Bank & Trust Co. v. George*, 540 F.2d 343 (8th Cir.1976), as the proper method of determining eligibility under Section 109(b)(2), Debtor satisfies the elements of this test, since Debtor is:

1) extensively regulated by the state Division of Banking;

2) subject to express state statutory procedures for liquidation; and is

3) a business public or quasi-public in nature, since Debtor solicits customers from the general public and issues letters of credit into the stream of commerce throughout the United States and internationally.

Other details support the motion, like the fact that the South Dakota Division of Banking acknowledged Debtor's status as a bank when it filed several documents in these

---

1. In addition to naming Movants and Pro Se Defendant Arieh Gildor, the complaint also names Sean O'Neill and Bonnie London as defendants.

2. *See* S.D.C.L. § 51A–12–2; –12–7.

3. *See* S.D.C.L. Ch. 51–27.

bankruptcy proceedings[4] and the fact that the Interim Trustee admitted Debtor was a bank in answer to interrogatories.[5] In response to the filed objections, Movants assert Debtor's classification as a bank is not affected by its inability to receive bank deposits: the South Dakota banking statutes, as they existed between 1986 and 1990,[6] classify Debtor as a bank, which means Debtor is ineligible for bankruptcy relief under Section 109(b)(2) and the case should be dismissed.

On October 13, 1993, the Interim Trustee objected to the motion as improperly grounded in fact or in law, postulating Debtor is merely a hybrid bank, prohibited from engaging in actual "banking" activity. As a hybrid, Debtor was never authorized to receive bank deposits, therefore, Debtor cannot be deemed a bank for purposes of Section 109(b)(2). A synthesis of case authorities, including *In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.1985); *First AM. Bank & Trust Co. v. George*, 540 F.2d 343 (8th Cir.1976); *Gamble v. Daniel*, 39 F.2d 447 (8th Cir.1930); and *In re Morris Plan Co. of Iowa*, 62 B.R. 348 (Bankr.N.D.Iowa 1986), is offered to assert one central focus of the "state classification test": an assessment of the entity's actual operation, which leads to the touchstone of the test—whether the entity has the ability to accept deposits—for no matter how many other bank attributes may exist, the critical attribute, at least for purposes of Section 109(b)(2), is whether the entity may accept deposits. This fundamental ability is the distinguishing mark which separates entities permitted to seek bankruptcy protection and entities excluded from bankruptcy; and since Debtor was never endowed with this critical mark, Debtor is a bank for purposes of state law only; it is simply not the deposit-taking bank intended to be excluded by Section 109(b)(2).

The Interim Trustee also argues Movants misapply the "state classification test" by using the wrong elements. The three criteria cited by Movants are not elements, but, rather, the Eighth Circuit Court of Appeal's own observations of common attributes shared by entities actually rendered ineligible for bankruptcy relief by virtue of the "state classification test."[7] The correct statement and application follows:

4. Prior to Debtor's conversion from Chapter 11 to Chapter 7 on August 29, 1989, the South Dakota Division of Banking filed a Motion to Appoint Trustee and a memorandum in support of the motion, stating:

> Without an express exemption, the Debtor is subject to state statutory provisions regarding the suspension and liquidation of banks. These statutes are found in SDCL Chapter 51–27. Several of the provisions of this chapter address the condition of a bank's insolvency. [citations omitted] Given the Debtor's voluntary declaration of insolvency, represented by its filing of a petition before this Court, the necessity for the Division to make a formal finding of insolvency is abated. Certainly by its own admission of insolvency, the debtor has in essence triggered the application of certain suspension and liquidation state statutes applicable to it.
>
> Recognizing that the nature of the business affairs of this Debtor are somewhat different than that of other banks governed by these statutes, the Division has elected to take an alternative form of action with regard to the Debtor's insolvency. Clearly, ... the Division possesses the authority to suspend all business activities of the Debtor. However, due to the nature of the Debtor's business and the amount and types of liabilities that exist in the Debtor's estate, the Division has at this time elected to not exercise its right to suspend the activities of the Debtor and assume receivership in favor of a remedy under bankruptcy laws. It is the Division's position that the claims of those parties in interest will be served by proceeding under the guidance of this Court.
> Memorandum in Support at 2–3 (Apr. 10, 1989).

5. On March 29, 1993, the Interim Trustee filed answers to interrogatories, including:

> Interrogatory No. 15:
> Do you claim that the debtor was a "bank" as that term is defined by *S.D. Codified Laws Ann.* 51A–1–2 and its predecessors during the time period from February 6, 1987, through August 31, 1989?
> ANSWER:
> Trade Finance Bank was a state chartered bank as that term is defined by *S.D. Codified Laws Ann.* 51A–1–2 and its predecessors during the time period from February 6, 1987, through August 31, 1989.

6. Title 51 was revised in 1990 to repeal the merchant banking statutes.

7. The Interim Trustee denies these common attributes are found in this case: 1) Debtor may have received a state charter, but it was only subject to state regulations; it was wholly unregulated by any federal entity; 2) Debtor may be subject to state liquidation statutes, but they are meaningless, since Debtor has no depositors that

1. *Is Debtor classified as a bank under state law?* At first blush, perhaps, but, in reality, no. All entities created under South Dakota's banking title are "banks," but the real question is whether the entity is permitted to engage in "banking." Here, Debtor was only authorized to perform nondeposit banking, therefore, it was a "bank," but it was prohibited from engaging in "banking."

2. *What powers were granted to Debtor?* As a merchant bank, Debtor was authorized to engage in nondeposit banking, i.e., to make loans or issue letters of credit. Debtor was never authorized to receive deposits, a clear indication Debtor was not granted banking powers.

3. *If Debtor is allowed to perform banking activities, is Debtor actually engaging in those activities?* Debtor was specifically prohibited from engaging in "banking"—its performance powers were limited to "merchant banking."

On November 10, 1993, Pro Se Defendant Arieh Gildor filed an objection to the Motion to Dismiss, echoing the Interim Trustee's overall position:

● South Dakota's liquidation statutes were designed with deposit-taking banks in mind, illustrated by the fact that the Federal Deposit Insurance Corporation [FDIC] may be appointed as receiver. This creates a practical problem since Debtor has no FDIC insurance or depositors, which means there is no public interest in using the state's liquidation provisions;

● South Dakota defines banks as entities which are authorized to accept deposits. Since Debtor does not accept deposits, it is not a bank;

● South Dakota recognizes the validity of this Court's jurisdiction since the State Banking Division filed a motion with this Court to appoint a trustee;

● Admitting that Debtor is a bank for liability purposes pursuant to South Dakota's lending statutes is not the same as admitting that it is a bank for eligibility purposes under the Bankruptcy Code;

● The State Banking Division formally suspended Debtor's activities by letter dated August 30, 1989, therefore, any status it may have had as a bank terminated years ago; and

● Debtor has been in bankruptcy for quite some time, therefore, it is improper, at this point, to seek a ruling under Section 109(b)(2).

## DISCUSSION

An interpretation of Section 109(b)(2) requires the Court to first consider the statutory language, and, where it is plain, the sole function of the court is to enforce it by its terms. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The language of Section 109(b)(2) makes certain financial institutions expressly ineligible for bankruptcy relief; namely, banks, savings banks, cooperative banks, savings and loan associations, credit unions, industrial banks, or any "similar institution" which is an insured bank. Merchant banks are not expressly named, but neither is "bank" defined. Despite the long historical development of banking, no satisfactory legal definition of a "bank" has evolved. Norton & Whitley, *Banking Law Manual* § 1.02, at 1–5 (1990). The definition of a "bank" is really a function of the legislature, but, even so, the problem has never been completely resolved, because there is no one prevailing federal or state statutory definition. For example, Articles 3 and 4 of the Uniform Commercial Code beg the question by defining a bank as "any person engaged in the business of banking." And under many state banking codes, a bank is defined as an institution established under specific sections of these codes having specific statutory powers. *Id.* at § 1.02[3]. Not surprising, then, that courts have had difficulty providing a clear legal definition. For purposes of Section 109(b)(2), courts should not attempt to construe a federal common

require the protection offered by liquidation; and 3) Debtor received its lending capital from a few associates and customers, therefore, its business is not public, or even quasi-public, in nature.

law definition of a bank but, rather, should rely on state law where the institution is incorporated to reach an appropriate definition. *Matter of Estate of Medcare HMO*, 998 F.2d 436, 440 (7th Cir.1993); *First AM. Bank & Trust Co. v. George*, 540 F.2d 343 (8th Cir.1976). Other reasons make this approach sound, including the fact the Bankruptcy Code was written "in the shadow of state law" and because these institutions have been excluded precisely because they are subject to state regulation, supporting the belief that the "interest in continuing state regulation into insolvency outweigh[s] any interest in uniformity," despite the potentially inconsistent insolvency regimes that may result. *Matter of Estate of Medcare HMO*, 998 F.2d at 440—41; *In re Peoples Bankshares, LTD*, 68 B.R. 536, 540 (Bankr. N.D.Iowa 1986); *In re Morris Plan Co. of Iowa*, 62 B.R. at 355; S.Rep. No. 989, 95th Cong., 2d Sess. 31 (1978), *reprinted in* App. Vol. 3 *Collier on Bankruptcy*, Part V (15th ed. 1993). If state law classifies the entity as one that is specifically excluded from being a debtor under Section 109(b)(2), the inquiry generally ends. *In re Cash Currency Exchange, Inc.*, 762 F.2d at 548. Under this approach, then, state law is "given predominating influence," however, courts are cautioned not to frustrate the purpose or full effect of the Bankruptcy Code by blindly following state law "without regard to an assessment of the actual operation." *George*, 540 F.2d at 346.

Other less-favored methods exist to help define the financial institutions excluded by Section 109(b)(2),[8] but the Eighth Circuit Court of Appeals endorsed the "state classification test" some sixty years ago in *Gamble v. Daniel*, 39 F.2d 447 (8th Cir.1930). At that time, it was Section 4 of the Bankruptcy Act, 11 U.S.C. § 22, that existed, and it was "banking corporations" that were made expressly ineligible for bankruptcy relief. In *Gamble*, the court had to determine a Nebraska trust company's bankruptcy eligibili-

ty, but, before it examined state law, the court fashioned its own definition of "banking corporation," opining the ordinary meaning to be a business based primarily on the receipt of deposits, adding "banking has been a development, and the above was its status in 1910. Other businesses might, and did, and still do, deal in commercial paper, make loans or borrow money without anyone thinking of them as banks." *Id.* at 450. And so, for purposes of eligibility under the old Bankruptcy Act, the court believed the critical attribute of a "banking corporation" was its ability to receive deposits, because, "strictly speaking," that was its "most obvious purpose." *Id.* Against this backdrop, the court turned to state law, but the exam covered more than just terminology—it also included powers actually granted. *Id.* at 451. While the trust company in *Gamble* had been granted most of the powers usually exercised by a bank, it did not have the ability to accept deposits, but, further, the court found it had amended its original charter to conform with Nebraska's article entitled, "Trust Companies," which was separate and apart from the article entitled, "Banks," which, not insignificantly, created three classifications of banks, all of which contemplated the receipt of deposits. *Id.* Ultimately, the court held the trust company was eligible for bankruptcy, since it was not a banking corporation under the meaning of: 1) Nebraska's state statutes; 2) the commonly accepted definition of "banking corporation" (as it was known in the early 1900s); and 3) Section 4 of the Bankruptcy Act. *Id.* at 452.

In 1976, some forty-six years later, the same court considered the bankruptcy eligibility of a North Dakota "bank & trust company." The court still referred to the "most natural meaning" of a "banking corporation" as "a corporation empowered to do a banking business," but, perhaps, realizing excluded categories are not as simply or obviously defined as they may appear on the surface, the court did not reiterate its previous posi-

---

**8.** A second test is the "independent classification test," wherein the court looks to the language of the Bankruptcy Code itself and construes its provisions using techniques of statutory construction. *In re Morris Plan Co. of Iowa*, 62 B.R. at 356. A third test is the "alternative relief test,"

which considers whether the policies behind Section 109(b)(2) would be better served by use of state or federal liquidation procedures. *Matter of Estate of Medcare HMO*, 998 F.2d at 439, *citing In re Republic Trust & Savings Co.*, 59 B.R. 606, 614 (Bankr.N.D.Okla.1986).

tion that the ability to accept deposits would be the "critical" guiding factor. Instead, the court emphasized further guidance is "traditionally" found in state law in order to determine: 1) how the entity is classified by the state; 2) what powers are granted to the entity; and 3) what activities actually engaged in were within the range of lawfully conferred powers. *George*, 540 F.2d at 346. When the court looked at state law, including the definition of "bank" and the finite list of "banking" activities, it found that a substantial amount of those powers had been granted to the entity in question and that the entity's principal business was actually that of receiving savings deposits, making loans, cashing checks, and issuing drafts and other bills of exchange—the very list of powers enumerated in the definition of banking activity. *Id.* at 347–49. After deciding North Dakota law rendered the "bank & trust company" ineligible for bankruptcy, the court observed several common factors among ineligible entities: "1) they are extensively regulated by well-organized departments of the states and of the United States; 2) they are subject to express statutory procedures for liquidation; and 3) the nature of their business is public or quasi-public and involves interests other than those of creditors." *Id.* at 349.

■ The Eighth Circuit has provided a template or pattern for applying the "state classification test." This pattern is an examination of state law. Although the power to receive deposits may be a critical factor in some states' classification of banks, it may not be in others. The state's classification will depend on its terminology, the actual powers granted to an entity, and the entity's actual operation. The Court does not agree with the Interim Trustee that numerous cases, including *In re Cash Currency Exchange, Inc.*, have ruled that an entity is not a bank under the "state classification test" unless it has the ability to receive deposits.

The issue in that case was similar to the case at hand: whether community currency exchanges, which engaged in the businesses of cashing checks and money orders for a fee and selling or issuing money orders, were banks for purposes of bankruptcy eligibility under Section 109(b)(2). *In re Cash Currency Exchange, Inc.*, 762 F.2d at 544. The Illinois Community Currency Exchange Act governed those entities and specifically exempted state and federal banks, which were subject to an entirely different set of provisions and had different activities; primarily, lending money, discounting notes, receiving deposits, and dealing in commercial exchange, none of which were performed by the currency exchanges. *Id.* at 548–49. In short, the currency exchanges did not engage in the banking business as it was defined and regulated by Illinois state law, therefore, they were eligible for bankruptcy. *Id.* at 550, 552. The result did not turn solely on the ability to accept deposits. The result was based on the state legislature's definition as illustrated by the specific statutory powers granted to and exercised by the particular entity.

### DECISION

■ In this case, Debtor's classification is a clear reflection of how merchant banking laws were established in South Dakota: via the state banking commission's desire to create a new class of bank called a "special purpose bank," further described as "*a bank that has the powers defined in SDCL 51–15–1(1) and (5)* [9] *except that it cannot take deposits from the general public.*" *Application of Trade Development Bank*, 382 N.W.2d 47, 48 (S.D.1986). In July 1984, the banking commission noticed its intent to fulfill this desire by amending or adopting two of its administrative rules. *Id.* This was completed in October 1984, and, on November 29, 1984, an entity known as Trade Development Bank was approved as a "special

---

9. These are 1986 definitional provisions which still exist today (*see* 51A–1–2):
  S.D.C.L. § 51–15–1(1): "Banking," the business of receiving deposits, discounting commercial paper, or buying and selling exchange, and any other activity authorized by this title;
    . . . .

S.D.C.L. § 51–15–1(5): "Bank," any corporation authorized under this title to engage in the business of banking or in the combined business of a bank and trust company.
*Application of Trade Development Bank*, 382 N.W.2d 47, 48 n. 1 (S.D.1986).

purpose bank," despite objection by the Independent Community Bankers Association of South Dakota, Inc., which made an appeal to the South Dakota Supreme Court. *Id.* at 49. The issue on appeal was whether the banking commission exceeded its authority by creating a new "special purpose bank" when it lacked the discretion to create or define banks. On February 19, 1986, the court ruled the commission did, indeed, overstep its authority. *Id.* at 51. The court found existing laws simply did not provide carte blanche authority "to create *new categories of banks*" (emphasis supplied), but hinted, "if a broader power is desired, it can be readily created by the Legislature." *Id.* Three weeks later, the legislature followed the suggestion and passed an act to "clarify the authority of the banking commission and to declare an emergency" so that the banking commission would have the ability to define and charter merchant banks. Act of March 7, 1986, ch. 399, 1986 S.D. Laws 771 (merchant banks authorized). On November 5, 1986, Debtor was chartered as a merchant bank pursuant to newly amended S.D.C.L. § 51–15–1 and –16.[10] In a relatively short period of time, the banking commission had achieved enough momentum to significantly change the state's banking landscape. It is interesting to note the continuing truth in the statement, "banking has been a development." In 1986, the status of banking included a new category of bank, one that was engaged in the business of nondeposit banking.[11]

Long before *Trade Development Bank* and the advent of merchant banks, however, South Dakota's banking code had been developed to portray a broad definition of bank, so broad, in fact, that it could comfortably encompass a "merchant bank" without any alterations: "Bank" was still defined as "any corporation authorized under this title to engage in the business of banking ...," and "banking" was still "the business of receiving deposits, discounting commercial paper, or buying and selling exchange, *and any other activity authorized by this title,*" which would, obviously, include "merchant banking." The actual powers formulating this new banking business did, however, require a separate amendment, and its activities were described as:

> the business of nondeposit banking, financing the purchase, sale and manufacturing of goods and offering other services related to foreign trade including, but not limited to, issuing letters of credit collateralized by the proceeds of other letters of credit or by purchase orders; providing prompt remittance of payment service between the United States and other countries; providing foreign currencies and credit; providing credit on the basis of guarantees and credit insurance issued in connection with the sale of goods and commerce; providing credit by way of discounting or collateralized bills, drafts, acceptances and other assets. The banking commission may exempt merchant banks from any rule made unnecessary because of the absence of deposits or any other power.

S.D.C.L. § 51–15–1(15). The evidence presented to the Court, coupled with Debtor's Amended Statement of Affairs, provides a sufficient basis for assessing Debtor's actual operation as one engaged predominantly in the issuance of loans and letters of credit, as well as other nondeposit-taking services, all within the realm of its lawfully conferred powers. In sum, the statutory terminology, the specific powers granted, and the actual operation of Debtor as a merchant bank, the elements of the "state classification test,"

---

**10.** Once the bank charter was received, Debtor was required to obtain a certificate of authority from the director of banking before it could advertise, publish, or represent it was engaged in the business of banking. S.D.C.L. § 51–18–2. In compliance thereof, Debtor obtained its "Certificate of Authority" from the division of banking and finance on December 22, 1986 (Exhibit No. 1).

**11.** Under the new amendments, the banking commission was authorized to charter merchant banks after considering several factors, such as the economic advantages offered to the state, the effect the applicant may have on resources or competition, as well as the convenience and benefit provided to the public in relation to potential adverse competitive effects. S.D.C.L. § 51–16–15.1. If the application was approved, the merchant bank would remain subject to any conditions set forth by the banking commission and remain subject to the banking commission's overall continued authority. *Id.*

clearly indicate South Dakota classifies Debtor as a bank.

Classifying Debtor as a bank under state law means Debtor falls within the provisions of Section 109(b)(2) pending one final inquiry: may a state-classified bank still be eligible for bankruptcy in cases where the state never authorized the bank to receive deposits? In other words, does the language of Section 109(b)(2) contain a caveat that exempts a state-classified bank from ineligibility if it was never endowed with the ability to receive deposits? Obviously not. For purposes of Section 109(b)(2), bankruptcy eligibility rests on the state's classification of the financial institution without further regard to any specific attributes. If a state's banking classification does not hinge on the ability to accept deposits, then so be it. South Dakota is one of those states: its definition of "bank" arguably begs the question by stating a bank may be any corporation "engaged in the business of banking," but the legislature has identified merchant banking as an authorized banking business. Debtor is classified as a bank under South Dakota law, and it is subject to the regulating and liquidating state law provisions.[12] "It is difficult to imagine a more clear statement of congressional intent; the bankruptcy court shall not have jurisdiction over banks for purposes of liquidation or reorganization." *In re Peoples Bankshares, LTD.*, 68 B.R. at 540.

## CONCLUSION

In 1986, the South Dakota legislature gave the state banking commission the ability to create a new class of state bank, known as a merchant bank. As originally intended, this new class of bank was empowered with non-deposit banking powers, such as financing the purchase, sale, and manufacturing of goods; offering services related to foreign trade, including the issuance of letters of credit; and providing credit by way of discounting or collateralized bills, drafts, acceptances, and other assets. As a merchant bank, Debtor received its banking charter pursuant to the state's banking provisions, obtained a Certificate of Authority to engage in banking activity from the banking commission, and engaged, primarily, in the lawfully conferred activity of issuing letters of credit. Despite the fact Debtor was never authorized to accept deposits, Debtor remained subject to the statutory regulations and liquidation provisions provided by the state's banking title, Title 51. In fact, the underlying complaint before the Court is premised solely on the state's banking provisions which regulate lending practices. After applying a "state classification test" which considers the statutory terminology, the specific powers granted to Debtor, and an assessment of Debtor's actual operation, the Court concludes South Dakota classifies Debtor as a bank, therefore, Debtor is also a bank under Section 109(b)(2) of the Bankruptcy Code, a provision which renders financial institutions, like banks, ineligible for bankruptcy relief, since they are already subject to a particular scheme of state regulation and liquidation. The Motion to Dismiss is granted. The Court will enter an appropriate order.

## ORDER GRANTING MOTION TO DISMISS

In recognition of and in compliance with the letter decision entered this day regarding a Motion to Dismiss of Defendants James Cope, Al Kurtenbach, Rick O. Johnson, Galen Hadley, Dale Clement, and Ted Muenster which seeks to dismiss this adversary com-

---

**12.** South Dakota's liquidation provisions are quite extensive, including: voluntary liquidation; objections to liquidation; distribution of assets; the director of banking's authority to take possession of a liquidating bank; management and control powers granted to a director involved in liquidation; and the priority of claims in a liquidation proceeding. *See* Ch. 51–27. "The more comprehensive the liquidation scheme, the stronger the indication that the state sees a strong public interest in direct governmental supervision and control of the liquidation or disso-lution of the institution." *In re Cash Currency Exchange, Inc.*, 762 F.2d at 551.

An objection based on practicality was made relative to the possible appointment of the F.D.I.C. as receiver. S.D.C.L. § 51–27–37 merely provides the director "may" appoint the F.D.I.C. "as receiver for a bank of which [the director] has taken possession and whose deposits are insured by such corporation...." Obviously, this does not apply here; the banking commission and director would handle this liquidation.

plaint and all other proceedings involving these defendants, it is hereby

ORDERED that the Motion to Dismiss is granted inasmuch as a "state classification test" applied in this case to consider both the statutory terminology and an assessment of Debtor's actual operation indicates South Dakota classifies Debtor as a bank, therefore, Debtor is also a bank for purposes of 11 U.S.C. § 109(b)(2) and is ineligible to seek bankruptcy relief as a Chapter 7 debtor.

### ORDER DISMISSING CHAPTER 7 BANKRUPTCY CASE

In recognition of and in compliance with the letter decision entered this day regarding a Motion to Dismiss of Defendants James Cope, Al Kurtenbach, Rick O. Johnson, Galen Hadley, Dale Clement, and Ted Muenster which seeks to dismiss adversary complaint No. 92–4056 and all other proceedings involving these defendants, and the Court having found a "state classification test" applied in this case to consider the statutory terminology, the powers granted to Debtor, and an assessment of Debtor's actual operation indicates South Dakota classifies Debtor as a bank and, thus, a bank for purposes of 11 U.S.C. § 109(b)(2), a provision that renders Debtor ineligible to seek bankruptcy relief; it is hereby

ORDERED that the above-captioned case is dismissed.

